EDMOND L. SMITH *v.* STATE OF INDIANA.

[No. 1069S228. Filed July 14, 1971. Rehearing denied September 15, 1971.]

*Paul G. Wallace,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Edward Squier Neal,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant was charged by affidavit with two counts of first degree burglary. Trial by jury in the Lake County Criminal Court resulted in a conviction on both counts and appellant was sentenced to ten to twenty years in prison on each count.

A. Appellant's first contention is that the trial court erred in denying appellant's motion to suppress certain evidence seized by the police from appellant's car after his arrest.

Since the items were taken from appellant's possession without a warrant the burden was on the appellee at the suppression hearing to show that the police action fell within one of the exceptions to the rule requiring a warrant prior to a search and seizure, *e.g.,* search incident to a valid arrest. *State* v. *Smithers* (1971), 256 Ind. 512, 269 N. E. 2d 874; *Vale* v. *Louisiana* (1970), 399 U. S. 30, 90 S. Ct. 1969, 26 L. Ed. 2d 409; *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *Jeffers* v. *U. S.* (1951), 342 U. S. 48, 72 S. Ct. 93, 96 L. Ed. 59; *McDonald* v. *U. S.* (1948), 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153. The appellee's evidence concerning the events leading up to the seizure was as follows: Officer Almutis of the Gary Police Department, testified that he and his driving partner Officer Doolittle, were on duty at approximately 4:00 A.M. the morning of June 28, 1966, when they heard a radio dispatch concerning a burglary and assault on a woman at 357 Pierce Street in Gary. The radio dispatch described a 1959 Chevrolet Stationwagon, license No. 45G7127, driven by a male, 59 years old, 160 lbs., in green work

clothes with a dark green or gray shirt with long sleeves. Almutis and Doolittle immediately went to the area to back up the district car. As they drove west on 3rd Avenue, one and one-half blocks from the scene of the crime, they noticed a 1959 Chevrolet stationwagon going west on the next street over to the north of 3rd Avenue. Traffic at that time was very light. As that car approached the intersection with the north-south cross street, Polk Street, it hesitated and then made a right hand turn north onto Polk Street. Almutis testified that as the car turned the streetlight enabled him to see that the driver was thin built, wearing dark clothes and a shirt with long sleeves. The officers sat at the intersection of 3rd Avenue and Polk Street and saw the stationwagon proceed north on Polk Street and stop in the street, with its lights on, some distance from the intersection between Polk and the next east-west street, 2nd Avenue. Almutis and Doolittle decided to investigate the car but could not turn onto Polk Street and follow the stationwagon because of a fence, so they went west to the next street, north to 2nd Avenue and turned east. As they proceeded east on 2nd Avenue they saw the stationwagon turn west onto 2nd Avenue off of Polk Street without stopping for a stop sign and at this time its lights were off. The officers turned on the red lights and siren and stopped the stationwagon. Both officers testified that Doolittle told the driver, the appellant, that he had run a stop sign and wanted to see his license. The appellant said he had no driver's license and Doolittle asked him to step out of the car and arrested him for driving without a license. Doolittle asked appellant for the registration papers and appellant said there were none. When appellant stepped out of the car the officers noticed that he had no shoes on and his socks were wet. While appellant was standing there Officer Almutis flashed a light on the front seat and saw a green cloth mask, a screwdriver, a pair of gloves, and a tightly folded ten dollar bill. The officers then handcuffed appellant and seized those items.

Appellant first argues that those items were seized in violation of his Fourth Amendment right to be free from unreasonable searches and seizures, in that the traffic arrest was invalid because a mere pretext to justify a search; second, appellant argues that they were not seized within the permissible scope of a search incident to a traffic arrest.

It has been held that a pretext arrest occurs when the police make an arrest for a minor offense, such as a traffic violation, and the surrounding circumstances show that the arrest is only a sham or a front being used as an excuse for making a search for evidence of a different and more serious offense for which no probable cause to arrest exists. *U. S.* v. *Santo* (1971), U.S.C.M.A., 8 Cr. L. 2393; *U. S.* v. *Weshenfelder* (1971), U.S.C.M.A., 9 Cr. L. 2018; *Amador-Gonzalez* v. *U. S.*, 391 F. 2d 308 (5th Cir., 1968); *Green* v. *U. S.*, 386 F. 2d 953 (10th Cir., 1967); *Taglavore* v. *U. S.*, 291 F. 2d 262 (9th Cir., 1961); *Henderson* v. *U. S.*, 12 F. 2d 528 (4th Cir., 1926). The concept of a pretext arrest is a difficult one because it assumes an objectively valid arrest is rendered invalid due to the motivations of the arresting officers. The issue only arises where the search can only be justified as one incident to the arrest for the minor offense. Therefore, we do not reach that issue if at the time the officers stopped the car they had probable cause to arrest appellant for the burglary and assault and if the items were seized in a valid search incident to that arrest.

The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense. *Williams* v. *State* (1969), 254, Ind. 154, 253 N. E. 2d 242; *Peterson* v. *State* (1968), 250 Ind. 269, 234 N. E. 2d 488; *Beck* v. *Ohio* (1964), 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d

142. The following evidence presented by the appellee clearly meets that test.

At approximately 4:00 in the morning, within minutes after the crime, the investigating officers at the scene radioed a description of the car and the burglar. Almutis and Doolittle heard that broadcast and were therefore looking for a '59 Chevrolet stationwagon, license plate, 45G7127, driven by a 59 year old, 160 lb. male, dressed in dark work clothes with a long sleeved shirt. Shortly thereafter, one and one-half blocks from the scene of the burglary, they saw a '59 Chevrolet stationwagon headed away from the scene, driven by a "thin built" male wearing dark clothing, and a long sleeved shirt. Considering the time of day and very light traffic conditions, the officers were justified in not treating the presence of that car as a mere coincidence. The car approached an intersection and hesitated, and then turned right, possibly because if he had gone straight ahead he would have had to pass another police car which was stopped further down on the street. The car proceeded north and before reaching the next intersection it stopped for awhile in the traffic lane. The police then saw it run a stop sign with its lights out. The combination of all of these circumstances clearly provided the officers with probable cause to believe the driver had committed a felony. For a case with similar facts see *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794.

The fact the police officers testified that prior to the seizure of the evidence they had formally arrested appellant only for a traffic offense does not require a different result. The making of a formal arrest is not determinative of the officers' right to conduct a valid search incident to arrest. In *Paxton* v. *State* (1970), 255 Ind. 264, 263 N. E. 2d 636, this Court said:

"Assuming that Officer Bishop saw Paxton driving in a manner reasonably thought by Bishop to be a violation of the reckless driving statute, he had sufficient reason to make the arrest. The mere fact that he subsequently failed to effect same in no way infringes upon his right at the time of the arrest to make a *valid*

search incident thereto. If Officer Bishop had probable cause to arrest Paxton on a reckless driving charge, that alone in our view would be determinative of his right to conduct the search." 263 N. E. 2d at 639.

The officers' correct choice of a legal theory to rely on at the time of the arrest is not the factor which provides protection to persons from unreasonable searches and seizures. The barrier to an intrusion on a person's constitutionally guaranteed "zone of privacy" by way of an arrest for a crime is removed only when the police officers are aware of specific, articulable facts amounting to "probable cause". *State* v. *Smithers, supra.* Where the police awareness of such facts is not present, then their choice of a legal theory is irrelevant because the arrest is invalid in any case. Where the police awareness of such facts is present, society's need to have the person arrested outweighs whatever minimal value the person arrested receives from having the arresting officers choose the correct legal theory for the arrest. The issue is, did the officers, at the time they stopped the car, have knowledge of facts and circumstances sufficient to warrant a prudent man of reasonable caution in believing that the driver of the car had committed a burglary and assault. We hold that they did have such knowledge.

Since at the time the officers stopped the car they had probable cause to arrest appellant for burglary and assault, the question remains whether the seizure of the items from appellant's car was justified as incident to that arrest. There is no *automatic* right to search a car just because the driver has been arrested. As this Court stated in *Paxton* v. *State, supra,* "the necessities of the situation at the time of the arrest justify the warrantless intrusion, not the fact of arrest." The scope of a search incident to arrest must be strictly tied to and justified by the circumstances which rendered its initiation permissible. *Terry* v. *Ohio* (1968), 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889. The basic principles concerning the nature and scope of a search incident to a valid arrest

were set out in *Chimel* v. *California, supra,* when the United States Supreme Court said:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U. S. at 762, 763.

In this case the officers had arrested a man suspected of burglary and physically attacking a woman. Therefore, they had reason to search his person and "the area within his immediate control" for weapons which could be used to assault the officers and for destructible evidence of those crimes. This area clearly included at least part of the front seat because appellant was standing by the open front door having just stepped out of the car, and he had access to that area. This was an "area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel* v. *California, supra,* at p. 763. Since the officers had a right to inspect that part of the front seat near appellant, they had a right to use a flashlight to conduct a thorough search. While engaged in examining the front seat Almutis saw lying in plain view on the front seat the items appellant claims were illegally seized, namely, a green cloth mask, a screwdriver, a pair of gloves, and a folded ten dollar bill.

It is true that everything lying within an area that may be searched may not solely on that account be seized by the searching police. There must be some nexus between the items and some specific criminal activity. *Warden* v. *Hayden* (1967), 387 U. S. 294, 87 S. Ct. 1642, 18 L. E. 2d 782. Seizable items such as instrumentalities, fruits or evidence of crime are seldom determined to be such merely by looking at them. Their significance as evidence or the nexus between the items and some criminal offense arises from the offense for which the person is arrested. Here appellant was arrested for breaking into a house at 3:30 A.M., striking the woman occupant of the home and stealing her purse. It is obvious that the mask, gloves and screwdriver are the kinds of things capable of being used in such a crime. The ten dollar bill could have been the fruits of the burglary. It is clear that there was a sufficient nexus between the items seized and the crime for which appellant was arrested to justify the seizure.

We hold that the trial court did not err in denying appellant's motion to suppress the evidence on the grounds that the evidence was seized pursuant to a search incident to a valid arrest.

B. Appellant's second allegation of error on appeal concerns the identification of appellant made by the victim at the hospital shortly after appellant's arrest. Appellant argues that this one to one confrontation was so suggestive as to be a violation of due process. However, at trial appellant did not object to the testimony of the victim concerning the identification at the hospital, and therefore this question has not been preserved for appeal. *Hardin* v. *State* (1970), 254 Ind. 56, 257 N. E. 2d 671; *Moore* v. *State* (1970), 254 Ind. 23, 256 N. E. 2d 907; *Johnson* v. *State* (1969), 253 Ind. 570, 245 N. E. 2d 659, reh. den'd, 247 N. E. 2d 212.

C. Appellant's third contention is that there was insufficient evidence to support the verdict under Count II, which

charged appellant with breaking and entering the victim's house with the intent to rape. Count I charged appellant with breaking and entering the victim's house with the intent to commit theft. Appellant received ten to twenty years on each count to be served concurrently. In reviewing the allegation of insufficient evidence this Court will not weigh the evidence and the reasonable inferences therefrom which support the verdict of the jury. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

The victim, Mrs. Doris Good testified that she was living at 357 Pierce Street, Gary, on June 28, 1966. At around 3:30 A.M. she was in bed, but not sleeping well due to being in her eighth month of pregnancy. She heard a noise and turned on the bedside light. When she did that she saw a man by the window in the living room looking right into the bedroom. He started toward her and she told him if he did not bother her she would not call the police. Then she testified:

"He still came at me and when he got to the side of the bed, I ducked my head and started to scream. He hit me, twice, real hard, but he didn't knock me out. After he hit me, he went back into the living room, grabbed my purse and then he went through the kitchen and that's all I saw of him."

We do not think that there is sufficient evidence from which the jury could infer that appellant entered the apartment with intent to rape. Appellant made no effort to sexually molest the victim and his hitting her is consistent with entering with the intent to steal and being surprised by the victim waking and turning a light on. It is true that appellant would not have had to commit the rape in order to be guilty of breaking and entering with the intent to commit a rape. It is the intent of the person at the time they break and enter that is at

stake. *Heacock* v. *State* (1968), 249 Ind. 453, 233 N. E. 2d 179; *Suter* v. *State* (1949), 227 Ind. 648, 88 N. E. 2d 386. However, evidence of what the person does after he breaks and enters is relevant in determining what his intent was at the time he entered. *Dixon* v. *State* (1963), 243 Ind. 654, 189 N. E. 2d 715. The victim's testimony is all the evidence on this point and it shows appellant only approached her after she had turned the light on and caught him in the house. His only contact with the victim was to hit her twice *after* she started screaming. He immediately left her, went to the living room, grabbed her purse and left. This evidence is ample to support Count I, but not Count II.

D. Appellant's last contention is that the trial court erred in not appointing counsel to present his motion for new trial. Appellant had appointed counsel at the trial but for reasons not appearing in the record, counsel did not file a motion for new trial. Appellant filed a pro se motion for new trial and a petition for pauper counsel to present it. The trial court overruled both motions. On May 14, 1968, this Court mandated the trial court to hold a hearing into appellant's indigency. The trial court did so and then appointed appellate counsel. Appellant now argues the trial court erred in not appointing counsel to present appellant's motion for new trial. There is no question that the trial court erred in overruling without a hearing appellant's petition for pauper attorney to present his motion for new trial. The issue is, What is the remedy for that error? This Court has already mandated the trial court to hold a hearing into appellant's indigency. The trial court did so and appointed counsel to bring this appeal. Counsel on appeal has argued all of the points raised in appellant's pro se motion for new trial and no claim is made that the pro se motion for new trial omitted any issues. Therefore, the trial court error has not prejudiced appellant and does not constitute reversible error.

Judgment affirmed as to Count I, and judgment reversed as to Count II.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 133.