DONALD LUDLOW v. STATE OF INDIANA.

[No. 774S140. Filed August 1, 1974.]

*David L. Allison,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

DEBRULER, J.—Petitioner, Donald Ludlow, was convicted of possession of metamphetamines in violation of the Indiana Dangerous Drug Act (IC 1971, 16-6-8-3, being Burns § 35-3333) after a non-jury trial in the Marion Criminal Court, Honorable Harold J. Kohlmeyer presiding. The Third District of the Court of Appeals affirmed his conviction with one judge dissenting in an opinion found at 302 N.E.2d 838. Ludlow has filed his Petition to Transfer in this Court in which he raises several allegations of error. It will not be necessary for us to discuss all the allegations however, since we now grant Ludlow's petition and reverse the conviction on the ground that the trial court erred when it overruled Ludlow's

motion to suppress the metamphetamines as being seized in violation of the warrant requirements of the Fourth Amendment.

The evidence elicited on this issue indicates that officers of the Indianapolis Police Department had a house located at 3715 Guion Road under periodic surveillance for possible drug related activities for a period of approximately two weeks prior to the night of January 26, 1972. At about 7:00 p.m. that night Officers Robertson and Brenton received information from an informer known to them who stated that he had just left the Guion Road house where he had observed a quantity of metamphetamines being cut in an upstairs bedroom. The informer also told the police the names of seven people who were in the house at that time.

The officers testified that they attempted to locate one prosecuting attorney and one judge in order to secure a warrant. When they could not locate either of these particular individuals they ceased attempting to get a search warrant, although the existence of other municipal courts with jurisdiction to issue a warrant was known to them. A check of the police computer system, however, revealed that there were outstanding arrest warrants on two of the seven people in the house; one for failure to appear on a traffic summons and a second for rape.

Pursuant to this information Officers Brenton and Robertson proceeded to the Guion Road address. They had not obtained a warrant to search the house. Within one half hour after first receiving the information from their informer the officers knocked on the front door of the house and identified themselves to petitioner Ludlow when he appeared at the door. Ludlow denied the officers entry into the house[1] and the police broke the door open. One officer arrested petitioner

---

1. Officer Brenton testified that petitioner and one other person looked out through some curtains on the front door but failed to open the door. Officer Robertson, on the other hand, stated that petitioner first opened the door and then slammed it when he saw a police officer.

Ludlow and another youth immediately inside the front door. The other officer ran upstairs to a back bedroom, where the informer had told him to proceed, and found the metamphetamines lying on a mirror on a bed in that room.

At his subsequent trial petitioner's objection to the introduction of the metamphetamines as being seized in the course of an unlawful search was overruled by the trial court. We hold today that Ludlow's objections should have been sustained.

It is well established that a judicially issued search warrant is a condition precedent to a valid search and seizure except under a very few, narrowly drawn exceptions, where the exigencies of the situation mandate an immediate response. *Katz* v. *U.S.* (1967), 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576.

"Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." *Agnello* v. *U.S.* (1925), 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145.

Since it was conceded here that the search and seizure of the drugs was conducted without a search warrant, the burden rested with the State to demonstrate that the police action fell within one of the exceptions to the general rule requiring a warrant. *Vale* v. *Louisiana* (1970), 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409; *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133; *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874. The State has introduced no evidence here to indicate that they would come within the "hot pursuit" exception to the warrant requirement. *Hayden* v. *Warden, Md. Penitentiary* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. There is no indication that the drugs were then in the process of being removed from the jurisdiction. *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Stuck* v. *State* (1970), 255

Ind. 350, 264 N.E.2d 611. Neither were the officers respond-
ing to an emergency which required immediate action to pre-
vent injury to life or limb. *McDonald* v. *U.S.* (1948), 335
U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

The State in its brief does, however, make the assertion
that this warrantless entry can be justified on the grounds that
the drugs were easily destructible and thus falls into
an exception to the usual warrant requirement. The
State's argument here misinterprets the scope of
that exception. This Court has already rejected the notion
that the nature of the items to be seized can alone create auto-
matic exceptions to Fourth Amendment safeguards. *State* v.
*Dusch* (1972), 259 Ind. 507, 289 N.E.2d 515. Moreover, there
is no evidence here which would indicate in any way that the
people in the house were in the process of destroying the drugs,
or were even aware that a raid was imminent. The rationale
for the clearly defined exception to the warrant requirement in
cases of destruction of evidence is based on the need for quick
action because the evidence is actually in the process of being
destroyed or is about to be destroyed. *Schmerber* v. *California*
(1965), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. What
the State askes here would result in an extension of the ex-
ception far beyond the bounds of its rationale.

The State's main justification for the seizure without a war-
rant is that the existence of the drugs was a result of a plain
view discovery while the police were in the process of execut-
ing a valid arrest warrant. Evidence at the hearings and trial
below clearly establish that the existence and location of the
drugs were known to the police prior to the raid and that
the search for and seizure of the drugs represented one of
the main, if not the dominant, purpose of the entry. The
State's position, therefore, would have us hold that although
there was an absence of exigent circumstances, the existence
of the valid arrest warrant by itself created an exception to
the search warrant requirement, even where the police knew

of· the drugs and intended to conduct a search for them at their entry.

The United States Supreme Court has several times held that these facts do not create an exception to the requirement for a search warrant. In *Trupiano* v. *U.S.* (1948), 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed 1663, the Court found that the seizure of contraband in plain view as a result of a valid arrest was unlawful since it was accomplished without a search warrant in a situation where the police previously knew the location of the contraband, and where there was no showing of exigent circumstances at the time of seizure. The Court held there that the existence of a valid arrest does not per se call for an abolition of the search warrant requirement.

> "But there must be something more in the way of necessity than merely a lawful arrest. The mere fact that there is a valid arrest does not ipso facto legalize a search or seizure without a warrant. (Cases cited) Otherwise the exception swallows the general principle, making a search warrant completely unnecessary wherever there is a lawful arrest." 334 U.S. at 708.

More recently the court dealt with a similar situation in its opinion in *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, and again stressed that the requirement of a search warrant cannot be abrogated to fictions surrounding the plain view doctrine:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came *inadvertantly* across a piece of evidence incriminating the accused.
>
> * * *
>
> "The second limitation (on the plain view doctrine) is that the discovery of evidence in plain view must be *inadvertant*." (Emphasis added.) 403 U.S. at 466, 469.

In the light of *Trupiano* and *Coolidge* it is apparent that the plain view doctrine cannot be held to justify the warrantless seizure of the drugs in this case. The discovery of the metamphetamines was hardly fortuitous or inadvertant, as

would be required for a proper application of the plain view exception. The police knew of the existence and exact location of the drugs in the house and they intended to seize them in the course of the arrest. In fact the police had known for some time of the probable role of the house on Guion Road in allegedly illicit drug activities. The opportunity for a warrant was thus hardly fleeting. There is simply no compelling reason offered by the State for not obtaining a search warrant. There are no exigent circumstances revealed by the evidence here.

The fact that two people were in the house who had outstanding arrest warrants issued for them cannot be itself sufficient to abolish the requirement of a search warrant when the police enter with the clear intention to search for and seize contraband. The practicability of obtaining a search warrant is obviously not affected or diminished by the mere presence of fugitives in the house. When the police decided to dispense with the search warrant and take matters into their own hands they did precisely what the Fourth Amendment was designed to prevent; they avoided the constitutional requirement for judicial supervision in a situation where there was no compelling reason for doing so.

Since the drugs here were seized in violation of the Fourth Amendment warrant requirement their introduction at petitioner's trial was erroneous. We therefore grant Ludlow's petition to transfer and reverse the conviction with instructions to discharge the petitioner.

Hunter and Prentice, JJ., concur; Givan, J., dissents with opinion in which Arterburn, C.J., concurs.

## DISSENTING OPINION

GIVAN, J.—I respectfully dissent from the majority opinion in this case. Much confusion arises in this case by reason of the fact that there were outstanding arrest warrants in possession of the police officers for two persons who were on the

premises entered, but whose prior offenses had no connection with the crime for which appellant was arrested.

There is much said in this Court's majority opinion and in the majority opinion and the dissenting opinion in the Court of Appeals concerning these facts. While it was true the arresting officers had every right to enter the premises to serve the outstanding arrest warrants, it is the position of this writer that this fact is extraneous to the matters now before this Court concerning the arrest of the appellant.

The case before us presents almost an identical factual situation with the case of *Ker* v. *California* (1963), 374 U.S. 23, 10 L.Ed.2d 726, 83 S.Ct. 1623. The police officers had had Ker under observation for some time on suspicion of dealing in marijuana. They had been informed by a reliable informant that Ker was obtaining a supply of marjuana from a certain known source. On the evening of the arrest, they observed Ker in the presence of this source, although they were unable to observe any transaction between them. They proceeded to Ker's apartment where they obtained a pass key from the building manager. By use of the pass key they entered Ker's apartment unannounced and without a warrant and arrested him in his living room. At the time of the arrest, they looked into the kitchen and observed a package of marijuana. Further search of the house disclosed a second package of marijuana.

In the case at bar the appellant's home had been under surveillance for several days on suspicion that he was dealing in drugs. On the night of the arrest a reliable informant, at the request of police officers, entered appellant's home, and after remaining a short while, returned to the waiting police officers and told them a quantity of metamphetamines was being cut in an upstairs bedroom. After receiving such information, the police officers spent the next half hour attempting to obtain a search warrant for the premises, but were unable to contact either a deputy prosecuting attorney or a magistrate. Having thus failed, the officers approached the house of the

appellant and knocked on the door. When appellant answered their knock and ascertained their purpose, he slammed the door in their face, immediately after which the officers heard the sound of persons running inside the house. At that time the officers broke open the door, arrested the appellant, went immediately to the upstairs bedroom and did, in fact, find a quantity of metamphetamines in the process of being cut.

In the *Ker* case, the Supreme Court of the United States, after first observing that California had a statute permitting arrest without a warrant upon probable cause, held that the search was proper. Indiana has a similar statute. See IC 35-1-21-1, BURNS IND. ANN. STAT., 1956 Repl., § 9-1024. This statute has been judicially determined to authorize the arrest without a warrant for a felony when the police officers have reliable information as to the commission of the crime. *Hanger* v. *State* (1928), 199 Ind. 727, 160 N.E. 449. Observing the well known fact that narcotics seldom remain in the same place for a long period of time and are easily disposed of upon danger of apprehension, the Supreme Court in *Ker*, at p. 39, stated:

> " 'Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844.' "

In *Ker*, as in the case at bar, it was contended that the search was unreasonable in that the officers could have obtained a search warrant before entering the premises. In answer to this contention the Supreme Court, at p. 41, stated:

> "The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest, United States v Rabinowitz, 339 US 56, 94 L ed 653, 70 S Ct. 430."

It is the opinion of this writer that transfer should be denied in this case for the reason the police officers had reasonable cause to believe that a felony was being commit-

ted inside the house of the appellant at the time they entered. Although the officers are to be commended for attempting to obtain a search warrant within the first half hour of the receipt of such knowledge, this attempt and its resultant failure, does not alter the fact that they had probable cause to enter the premises without a warrant nor does this case come within the facts of *Trupiano* v. *United States* (1948), 334 U.S. 699, 92 L.Ed 1663, 68 S.Ct. 1229, where the officers were in possession of the information sufficient to secure a warrant for some three weeks prior to the arrest, for in the case at bar, although the premises of the appellant had been under surveillance for some time, there is nothing in this record to indicate that sufficient probable cause existed for the obtaining of a search warrant until the development of the facts within a half hour of appellant's arrest.

The record in the case at bar discloses excellent police work within the requirements of the Constitution and the United States Supreme Court decisions.

I would, therefore, deny transfer.

Arterburn, C.J., concurs.

NOTE.—Reported at 314 N.E.2d 750.