LARRY EDWARD STINCHFIELD v. STATE OF INDIANA

[No. 1-177A13. Filed October 6, 1977.]

*Glenn A. Grampp, James D. Lopp, Jr.*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Gerald M. Arthur*, Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant, Larry Stinchfield, was charged by information tried by jury, and convicted of four counts of illegal possession of a controlled substance.[1] Stinchfield was sentenced to the Indiana Department of Correction for a determinate period of five years and fined a total of $4,000. We reverse, having found that the trial court erred in overruling the defendant's motion to suppress certain evidence acquired by the State pursuant to a seizure of items from the defendant's residence; accordingly, we will not discuss the defendant's allegations of error which do not concern the dispositive issue of this appeal.

## Issue

The question before the court is whether the defendant's conviction resulted from the trial court's allegedly erroneous admission of evidence which, the defendant asserts, was the "fruit" of an illegal seizure by the Evansville police in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and under art. 1, § 11 of the Indiana Constitution.

## Facts

The facts most supportive of the trial court's overruling of Stinchfield's motion to suppress are as follows:

At the time of the contested search and seizure, Stinchfield lived alone, renting the front rooms of a house in Evansville. On

---

1. Count I, IC 1971, 35-24.1-2-6(d)(4) and IC 1971, 35-24.1-4.1-7(a); Count II, IC 1971, 35-24.1-2-6(e) and IC 1971, 35-24.1-4.1-7(a) and (b); Count III, IC 1971, 35-24.1-2-8(c)(8) and 35-24.1-4.1-7(a) and (b); Count IV, 35-24.1-2-8(c)(3) and 35-24.1-4.1-7(a) and (b). All citations from Burns Code Ed., Supp. 1977.

September 16, 1975, at approximately 4:00 p.m., Officer Trible of the Evansville Police Department, together with a paid, confidential "informant", drove to Stinchfield's residence to obtain a controlled substance. The record reveals that the "informant" was actually a part-time agent of the police (sometimes known as a "contingent-fee" agent), for he was paid "[b]ased according to how much time he puts in and the importance more or less, of the work he does." Trible and the informant had no search warrant with them at this time.

The pair arrived near Stinchfield's residence, and Trible searched the informant to be certain that the latter had no drugs on him prior to his entry into the defendant's apartment. The informant thereupon left Trible in the car and proceeded to the house. Unfortunately, the record becomes so unclear at this point that we could only speculate on the nature of the agent's actions while within Stinchfield's home. Trible's testimony on this point was as follows:

"Q. Was the purpose in taking the informant to Mr. Stinchfield's residence to secure some type of a controlled substance?

A. Yes.

\* \* \*

Q. Now, Officer, at the time you testified to here, at approximately four o'clock on the afternoon of September the 16th, 1975 when you and this informant known as Steve Brown[2] went essentially to Mr. Stichfield's residence, did you at that time have a search warrant?

A. No.

Q. Now, at some time — well strike that, let me go back here. When your informant went to Mr. Stinchfield's residence on the date in question and at the time in question, did you see him enter the residence?

A. Yes.

2.  A pseudonym used for the purpose of this hearing.

Q. Did you see him return?

A. Yes.

Q. Now, what, if anything, did this informant give to you when he returned from Mr. Stinchfield's residence?

A. He gave me one Fastin capsule."

Other evidence concerning the informant's entry is contained in the affidavit (describing the same incident) used by Trible to obtain a search warrant for Stinchfield's residence. This affidavit, which was admitted into evidence on the defendant's motion, reads in pertinent part as follows:

"Affiant [Trible] states that he bases his belief on the following: that within 48 hours immediately prior to making application to this warrant, affiant accompanied a confidential and reliable informant to said [Stinchfield's] premises where he conducted a search of said reliable and credible informant finding no controlled substances and personally observed said informant go into the above described premises, and after a few minutes said informant returned and gave affiant a blue and white capsule which the informant said he obtained in said apartment and that he observed other such capsules and other types of capsules in said apartment."[3]

Trible further testified that he subsequently had the fastin capsule tested, and upon learning of its content, used this information to obtain the search warrant for Stinchfield's apartment. All information in the affidavit for the search warrant was the result of the informant's September 16th entry into Stinchfield's residence and his removal therefrom of the fastin capsule. Trible executed the warrant at 11:00 P.M. on September 16th, and the contraband he found on the defendant's premises forms the basis for Stinchfield's conviction.

3. Upon cross-examination of Trible *at trial*, defense counsel elicited a somewhat more detailed version of the facts: Stinchfield, according to Trible, was outside and only a few feet from an open side door when the informant entered the house, through said door. Were we to consider this testimony our decision herein would remain the same, for even with this supplemental version of the facts we have no knowledge of the informant's conduct while in the defendant's home.

## DISCUSSION

Stinchfield argues that the trial court has committed reversible error in overruling his motion to suppress all evidence gained from the second search of his home (pursuant to the warrant); he contends that since the second search was the product solely of the informant's illegal removal of the fastin capsule from the home on the same day, all evidence found pursuant to the second search was the "fruit" of an illegal seizure.

By filing his motion to suppress, Stinchfield sought to establish that the search and seizure pursuant to the warrant were illegal; he contends that he failed in this endeavor due to the following erroneous assumptions of the trial court: (1) the trial court evidently assumed that the burden was *on the defendant* to establish the illegality of the search; and (2) although Stinchfield attempted to show the illegal nature of the police action, he was prevented from doing so by the trial court's refusal — over the defendant's repeated motions and requests — to require the State to disclose the name of, and thus to produce for cross-examination, the confidential agent. In short, argues Stinchfield, the State is concealing its illegal seizure behind the so-called "informant's privilege."

It should be noted that the case at bar differs from other cases wherein the informant, or undercover agent, enters a suspect's house *on the latter's invitation*, and then *purchases*, or otherwise acquires contraband *with the consent* of the suspect (whether or not the suspect is cognizant of the informant's subterfuge). In such cases the informant usually delivers the acquired substance to an officer who then might procure a search warrant for the suspect's home. See *Mills v. State* (1975), 163 Ind. App. 608, 325 N.E.2d 472, and cases therein cited. However, the record of the instant case, in contrast to *Mills*, supplies no information regarding the propriety of the informant's conduct while within Stinchfield's home, and we will not speculate on his manner of obtaining the drugs in question.

Furthermore, it should be noted that although there is a distinction between searches by the *State*, on the one hand, and

searches by *private individuals* on the other, this distinction is not pertinent to the case at bar. Here the agent's action was inextricably that of the State. *Machlan v. State* (1967), 248 Ind. 218, 225 N.E.2d 762; *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540. In *Machlan* the court held a search invalid when it appeared that the search was undertaken by a private person at the instigation of the police. The *Zupp* court found a search to be valid although the defendant's landlord, who had searched the defendant's apartment and obtained incriminating evidence against the defendant therein, acted without the defendant's consent. This search was upheld *despite the fact* that the landlord had been an informant for the police in the past. The court noted that the landlord, at the time of the search, was not in the employ the of the State, nor did he act with police authorization. These facts distinguish *Zupp* from the present case. Finally, it was recognized in *Ortez v. State* (1975), 165 Ind. App. 678, 333 N.E.2d 838, that there is a distinction between "informers, and those who are somewhat euphemistically referred to as 'special employees'." That is, between citizens who volunteer casual observations or suspicions, and those paid by the police over a period of time, to perform designated functions. In view of these authorities, there can be no doubt that the informant was actually an agent of the State when he entered Stinchfield's home and removed the fastin capsule.

At Stinchfield's suppression hearing the State took the position that the defendant had the burden of proving that a search and seizure actually had occurred when the agent obtained the fastin capsule; the State also asserted that the defendant had not met this burden. On appeal, the State now urges us to accept the proposition that Stinchfield *consented* to the seizure. We find no merit in either of the State's arguments; rather, we agree with the defendant that his motion to suppress should have been sustained in view of the meager facts before the court at the suppression hearing.

We again emphasize that in reviewing a trial court's ruling on a question of fact, this court will not reweigh the evidence nor decide questions concerning the credibility of witnesses. *Young v. State* (1975), 264 Ind. 14, 332 N.E.2d

103, and cases therein cited. Rather, it is the proper function of this court to look to that evidence most supportive of the trial court's holding, together with all logical and reasonable inferences which may be drawn therefrom, and to determine whether that evidence is sufficient in probative value to establish the facts relied upon by the State. *Young, supra; Gregory v. State* (1972), 259 Ind. 295, 286 N.E.2d 666, and cases cited therein.

Considering the evidence introduced on the issue of the legality of the agent's entry and seizure, we hold, as a matter of law, that such evidence is insufficient to establish the validity of a warrantless seizure. The evidence shows that an "informant" (actually a paid agent of the State), "entered" the defendant's house (the record at the suppression hearing did not reveal *how* that entry was effected), and "obtained" (again we are left unaware *how* or *where* within the house) a controlled substance, giving it later to Trible. The record is silent on the State's assertion that the defendant consented to any of the informant's actions (whatever they may have been). However, the record *does* reveal that a warrantless seizure occurred on the defendant's premises.

Unquestionably the State must obtain a valid search warrant prior to the search of a citizen's home and a seizure of goods therein, barring a few categories of exceptional circumstances. *Vale v. Louisiana* (1970), 399 U.S. 30, 90 S. Ct. 969, 26 L.Ed.2d 409; *Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750. In *Ludlow*, our Supreme Court stated:

"It is well established that a judicially issued search warrant is a condition precedent to a valid search and seizure except under a very few, narrowly drawn exceptions, where the exigencies of the situation mandate an immediate response. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

'Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.' *Agnello v. United States* (1925), 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145."

*Ludlow* also reaffirmed the principle that the State has the burden of establishing a warrantless seizure to have been conducted legally:

> "Since it was conceded here that the search and seizure of the drugs was conducted without a search warrant, *the burden rested with the State to demonstrate that the police action fell within one of the exceptions to the general rule requiring a warrant. Vale v. Louisiana* (1970), 399 U.S. 30, 90 S. Ct. 1969, 26 L.Ed.2d 409; *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133; *State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874." (Emphasis added).

As in *Ludlow*, the State in the instant case offered no evidence at the suppression hearing which would justify its search. The State argues that it is inferable from the evidence at trial[4] that Stinchfield consented to the agent's *entry* onto Stinchfield's premises.

Assuming *arguendo* that Stinchfield consented to such entry, the record still fails to reveal the defendant's consent to the seizure. We have no information that the defendant agreed to or even knew of the seizure; nor do we know whether the informant and the defendant ever had any communication whatever. The case of *Sayne v. State* (1972), 258 Ind. 97, 279 N.E.2d 196, reviewed the relevant case law on the requisite showing of consent to a search. That court stated, at 201:

> "The State also maintains that the search could be justified on the ground that the appellant consented to the search of the automobile. In this case the evidence indicates that the officer asked the appellant to pull down the sunvisor and that the appellant complied with this request, but that he could not remember the exact words he used in making the request. The law in this area was well stated in *United States v. Payne*, 429 F.2d 169 (9th Cir. 1970), where it was said:
>
> 'When the prosecution seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Curiale*, 414 F.2d 744, 747 (2nd Cir.

4. See footnote 3, *supra.*

1969). Though consent may constitute a waiver of Fourth Amendment rights, *Zap v. United States,* 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1945), to be valid a waiver must be an intelligent relinquishment of a known right or privilege, *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Such a waiver cannot be conclusively presumed from a verbal expression of assent. The Court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. *Cipres v. United States,* 343 F.2d 95, 97 (9th Cir. 1965).' 429 F.2d at 171.

Clearly, this search cannot be legitimized by the finding of consent in this case. At the most the facts before us indicate that the 'so-called consent', constitutes nothing more than *passive submission* to the search and therefore falls far short of a voluntary and intelligent waiver or 'relinquishment of a known right or privilege'." (Original Emphasis).

In the instant case the record reveals no statement, either verbal or written, wherein the defendant consents to the seizure of the fastin capsule, nor can we find any other evidence which might show the defendant's consent. Although the defendant need not be aware of the informer's true identity and purpose before he can be said to have given consent, *Lewis v. United States* (1966), 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312, it still must be shown in the record that the defendant gave his consent to the informant-invitee's relevant actions. In the present case the only evidence directed at the issue of consent came from the defendant; his testimony was that he at no time consented to anyone's presence on his property on September 16th; nor did he give anyone permission or consent to remove anything therefrom.

In view of the State's failure to justify the warrantless search and seizure of the fastin capsule, the defendant's motion to suppress should have been sustained, for the evidence sought to be suppressed was the product (or "fruit") of that illegal search. As was stated in *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634 at 640:

"In a trial in a state court, evidence which was discovered during a search prohibited by the Fourth Amendment is inadmissible. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Evidence which the state discovered by using the illegally found evidence is also inadmissible. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In that case, the narcotics which Yee gave to the police were inadmissible against Toy, because the police learned about Yee's narcotics from statements by Toy during an illegal search of Toy's home. This Court recognized that the State may not exploit illegally acquired evidence in *Dowlut v. State* (1968), 250 Ind. 86, 235 N.E.2d 173."

Having found constitutional error we must now determine whether that error has been prejudicial to the defendant. *Bauer v. State* (1973), 157 Ind. App. 400, 300 N.E.2d 364. Since the drugs seized pursuant to the search of Stinchfield's house were an essential part of the case against him, and since these drugs were not cumulative in their effect, their erroneous introduction at trial could never be harmless error beyond a reasonable doubt. *Bauer, supra.*

We therefore hold that the trial court erred reversibly in overruling the defendant's motion to suppress. Accordingly, we must reverse and remand.

Reversed and remanded, with instructions to sustain defendant's motion for a new trial, and for other action not inconsistent with this opinion.

Reversed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE — Reported at 367 N.E.2d 1150.