**Craig D. RIHL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–479A115.

Court of Appeals of Indiana, Second District.

Dec. 30, 1980.

John L. Hess, Petit, Jones, Trout & Hess, Indianapolis, for appellant (defendant below).

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

SULLIVAN, Judge.

■ Defendant–Appellant Craig Rihl was convicted on one count of possession with intent to deliver marijuana, and one count of possession with intent to deliver hashish.[1] He was sentenced to two years in

---

1. I.C. 35–24.1–4.1–10(a)(2) (repealed Oct. 1, 1977) (current version at I.C. 35–48–4–10 (Burns Code Ed. Supp.1980)).

prison and fined $1,000 on each count, the sentences to run consecutively. Four issues have been presented for consideration on appeal:

    1) Did the trial court err in admitting evidence seized during a warrantless search and arrest, conducted as a result of information supplied by an informant?[2]

    2) Did the trial court commit error in overruling Rihl's pre–trial Motion to Compel Discovery as to certain interrogatories pertaining to a "confidential reliable informant" mentioned by the State during the suppression hearing?

    3) Did the trial court err in overruling Rihl's pre–trial Motion to Dismiss based upon a written agreement between Rihl and the arresting officers?

    4) Did the trial court commit error in imposing consecutive sentences?

We affirm the conviction but remand to correct an error in sentencing.

## I.

Rihl contends the trial court erred when it admitted into evidence the marijuana and hashish seized during a warrantless search and arrest. This contention is premised upon two arguments: 1) the State failed to show the reliability of its informant and therefore lacked probable cause to search; and 2) the police failed to demonstrate exigent circumstances to justify the warrantless search of Rihl and his subsequent warrantless arrest.

■ A warrantless search can only be justified by probable cause *and* one of the recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *City of Indianapolis v. Ervin* (2d Dist.1980) Ind.App., 405 N.E.2d 55, 62

n.3. The State carries the burden of proving that the warrantless action fell within one of these exceptions. *Bruce v. State* (1978) Ind., 375 N.E.2d 1042, 1068, *cert. denied,* (1978) 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; *Ludlow v. State* (1974) 262 Ind. 266, 269, 314 N.E.2d 750, 751–52. Similarly, when probable cause is based solely upon information supplied by an informant the State must show: 1) the informant is a generally reliable witness; and 2) the informant supplied sufficient basic facts to support a finding that more probably than not his conclusion is correct.[3] *Aguilar v. Texas* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Spinelli v. United States* (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *see Pawloski v. State* (1978) Ind., 380 N.E.2d 1230. In reviewing the trial court's determination concerning admissibility, we do not reweigh the evidence but look to the evidence most favorable to the ruling.

The record discloses that on the afternoon of Friday, August 12, 1977, Officer Gary Cook introduced Detective Charles Stanley to an informant who had agreed to set up a "buy" from Rihl. During a subsequent interview at the Hamilton County jail where the informant was a temporary resident, Stanley learned from the informant that he had purchased drugs from Rihl in the past. The informant also explained the usual procedure for the purchases in some detail:

"Q.   You said, I think, earlier on direct, something about ... you then talked with him about the Defendant and you talked to him about his selling habits and things like that, ...

A.   Yes, sir.

Q.   Why don't you expand a little bit on that to the Court, what did you talk to him about? This is [the informant].

---

2.   Although Rihl couches his argument in terms of the ruling on his Motion to Suppress, objections to the admission of the evidence itself were made at trial in the form of specific incorporation of the objections made at the suppression hearing. The alleged error has therefore been preserved upon appeal. *See Norton v. State* (1980) Ind., 408 N.E.2d 514; *Lagenour v. State* (1978) 268 Ind. 441, 376 N.E.2d 475.

3.   This is the recognized standard for a probable cause affidavit presented to a magistrate, but it applies with equal force to the present situation. *State v. Mooney* (4th Dist.1979) Ind.App., 398 N.E.2d 698, 699 (and cases cited therein).

A. All right. I asked [the informant] to explain to me what procedure was taken when the purchase of marijuana or hashish would take place from Mr. Rihl. And he advised me that he would call ahead and that Mr. Rihl would meet him on Eller Road, south of 116th Street. He'd either be on foot or on his bicycle and that he would have a blue denim bag, which he wore around his neck, with the marijuana and hashish in it.

Q. In other words, whatever he ordered?

A. Right.

Q. In the denim bag?

A. Yes, sir."

At about 3:30 p. m. Stanley took the informant and Cook to his office where the informant called Rihl to set up the buy. Stanley left the room during the call, but Cook remained to monitor one side of the conversation. At the hearing Cook testified the call opened " 'Yeah Craig, this is . . .' " He also testified he heard the informant state, apparently in response to a question from Rihl, " 'Well, I need a couple bags of marijuana and I need an ounce of hash' ".

Before proceeding with the buy Stanley and Cook searched both the informant and his car; no drugs were found. The officers then followed the informant in an unmarked patrol car to Eller Road, just south of 116th Street. Rihl was waiting to be picked up at the exact point previously identified by the informant. Officer Cook testified the blue denim bag containing the marijuana and hashish was strapped over Rihl's head. Rihl entered the informant's car which was stopped after it had traveled a short distance, Rihl was searched, and the marijuana and hashish were found in the blue denim bag hanging around his neck. Rihl's warrantless arrest followed.

### A.

### *Probable Cause*

■ Probable cause to search can be, and often is, based upon an informant's tip. As a general rule, however, the informant's reliability must be established before a probable cause determination can be made.[4] Reliability can be demonstrated by either showing a past record of reliability or by verification of extrinsic facts which indicate the informer's information is trustworthy. *Pawloski v. State, supra*, 380 N.E.2d at 1232; *Bowles v. State* (1971) 256 Ind. 27, 30, 267 N.E.2d 56, 58. In *Pawloski, supra* at 1232, our Supreme court recently stated that this second method is preferable, perhaps mandatory, when, as here, the informant is something less than a "cooperative citizen."

■ While there is no evidence in the Record to support a finding of reliability based on past "track record", there is ample evidence to support such a finding under the verification method. The informant here provided an explicit, detailed description of the buy procedure, complete with reference to the pick-up point and the blue denim bag which would contain the marijuana and hashish. The informant also made a telephone call to set up the buy in the presence of one of the arresting officers. As the facts show, each and every detail of the informant's information was corroborated by the officers' own observations. This step-by-step verification more than adequately substantiates the informant's reliability and there can be no doubt his information was sufficient, once corroborated, to provide the officers with probable cause to search. *See Payne v. State* (3d Dist.1976) 168 Ind.App. 394, 343 N.E.2d 325. *Compare Bowles v. State, supra*, 267 N.E.2d at 58 (anonymous tipster failed to provide adequate facts to allow extrinsic verification).

4. Rihl does not challenge the accuracy or sufficiency of the basic facts supplied by the informant. Such a challenge, at any rate, would be meritless given the details provided by the informant and their verification by the officers.

### B.

### Warrantless Search

It is well settled that a search warrant is a condition precedent to a valid search and seizure except where the exigencies of the situation mandate an immediate response. *Ludlow v. State, supra,* 314 N.E.2d at 751. The validity of a warrantless search thus turns upon the facts and circumstances of each case. *United States v. Morrow* (7th Cir. 1976) 541 F.2d 1229, *cert. denied,* (1977) 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778.

The evidence shows the transaction involved here was the sale of controlled substances, always a potentially volatile situation regardless of the precautions taken. The evidence also shows the sale was to take place in an automobile, and that Rihl was riding in the automobile immediately prior to the search. It is axiomatic that exigent circumstances to justify an on–the–spot response by law enforcement officers are implied from the involvement of an automobile in the perpetration of a crime.[5] This implication is justified by the inherent mobility of an automobile and its potential to easily remove both the defendant and the evidence from the jurisdiction. As recently stated by our Supreme Court: "Given the public nature of automobile travel and the inherent mobility of automobiles, rigorous enforcement of the warrant requirement is not necessary." *Rogers v. State* (1979) Ind., 396 N.E.2d 348, 352; *Johnson v. State* (3d Dist.1975) 163 Ind.App. 684, 688, 325 N.E.2d 859, 861. *Compare Ludlow v. State, supra* (warrantless search of a *house* struck down for lack of exigent circumstances). The exigency of the situation here was further enhanced by the fact that had Rihl been allowed to leave the car, the police would have been presented with a Hobbesian Choice: pursue Rihl in the hope that he still has the drugs; or pursue the informant in the car on the chance that Rihl's departure was prearranged and the informant was not as trustworthy as the officers were led to believe. We think the officers acted correctly in avoiding this dilemma.

Given the potential dangers of the situation, a controlled substance sale, coupled with the exigent circumstances involving the automobile, we must conclude that the State sustained its burden of showing the existence of an exception to the warrant requirement.[6] We can find no error in the trial court's evidentiary ruling.

### II.

Rihl next contends the trial court erred in overruling his Motion to Compel Discovery, i. e., certain interrogatories sought to be propounded to the State dealing with the identity and reliability of a second "confidential reliable informant." Rihl asserts the State bolstered its case by referring to this second informant during the suppression hearing, and relies on *Glover v. State* (1969) 253 Ind. 121, 251 N.E.2d 814, to support his contention that the State's failure to supply information on the informant hindered his ability to prepare an adequate defense.

The confidential–reliable informant question arose during the suppression hearing when Detective Stanley was questioned by the prosecutor concerning the first informant's credibility:

"Q. Did you do anything or did you hear anything to establish [the first informant] as a credible individual concerning the information he was giving you?

A. Yes, sir, the information he was giving me I have heard in the past.

Q. From who?

---

5. Rihl relies heavily on statements made by Stanley and Cook during the suppression hearing which tend to negate a finding of exigent circumstances. The subjective impressions and evaluations of the officers, however, cannot overcome the realities of the situation. *Taylor v. State* (1980) Ind., 406 N.E.2d 247, 249.

6. These same circumstances justify Rihl's warrantless arrest after the marijuana and hashish were found in his possession. *Pawloski v. State, supra,* 380 N.E.2d at 1233; *Payne v. State, supra,* 343 N.E.2d at 334.

A. Another confidential reliable informant that deals with me in narcotic traffic.

Q. Have you received from this other individual, have you received information that you've proved to be true in the past?

A. Yes, sir, many times.

Q. Have you gotten any convictions?

A. Not at this time. I'm expecting some.

Q. But you have checked out this other individual thoroughly?

A. Yes, sir.

Q. And that individual has proven to be truthful?

A. Yes, sir.

Q. And his story matched that of [the first informant]?

A. Yes, sir."

The general policy in Indiana favors nondisclosure of criminal informants unless disclosure is relevant and helpful to the defense or is essential to a fair trial. *McCulley v. State* (1971) 257 Ind. 135, 138, 272 N.E.2d 613, 615. The defendant has the burden of showing a need for disclosure. *Lewandowski v. State* (1979) Ind., 389 N.E.2d 706, 709. The Record here clearly shows disclosure would have been neither relevant nor essential to Rihl's defense.

Rihl's reliance upon *Glover v. State, supra,* is misplaced. In *Glover* an officer testified at trial, before the jury, that an informant supplied the essential link in identifying the defendant as the guilty party. The Court specifically noted that, "this is not one of the rather common cases in which a defendant seeks to find out in preparing his defense preliminary to trial, the name of informers ... but rather [this case involves] the inherent right of a defendant to attack the probative value of the testimony and the credibility of a witness." 251 N.E.2d at 817. In contrast, the present case involves a situation where the second informant was mentioned only at the suppression hearing, had no connection with the events of August 12, 1977 which led to Rihl's arrest, and provided none of the information which formed the basis for the officers' probable cause to search Rihl prior to his arrest. At best the confidential reliable informant served the tangential functions of verifying the first informant's reliability. This, as we stated in part I, *supra,* was established by the officers' verification of the detailed facts provided by the first informant, rather than by the first informant's known reliability to the arresting officers.

■ In this light it is clear that the confidential reliable informant played no relevant or material part in Rihl's search and arrest. Rihl has thus failed to make a showing that disclosure of this informant's identity, or other personal information, would be helpful in preparing his defense or essential to a fair determination of the case. *See Lewandowski v. State, supra,* 389 N.E.2d 706; *McCulley v. State, supra,* 272 N.E.2d 613; *Garner v. State* (2d Dist.1975) 163 Ind.App. 573, 325 N.E.2d 511. Accordingly we find no error in the trial court's denial of Rihl's Motion to Compel Discovery.

### III.

Rihl's third contention is that the trial court erred by denying his Motion to Dismiss Counts III (possession with intent to deliver marijuana) and IV (possession with intent to deliver hashish) of the information filed against him. Rihl claims he entered into an agreement with the arresting officers which granted immunity from prosecution for these charges. Essentially two arguments are forwarded in support of this claim of immunity: first, public policy considerations require the State to stand by the agreement; and second, any ambiguity should be strictly construed against the State. Both of these contentions are meritless.

On the evening of his arrest, August 12, 1977, while being held in the Hamilton County Jail on informal charges of possession of marijuana and possession of hashish, Rihl entered into the following "agreement" with Detective Stanley and Deputy Cook:

"It is agreed that if Craig D. Rihl takes Deputy G. Cook and Dect. Sgt. C. P. Stanley to his home located 6240 E. 116th St. Nobles, Ind. and turns over any controlled substance such as marijuana, hashish, or any other narcotic drug found at that location he will not be charged with any other criminal offense except those charged before 6:00 O'Clock p. m. 8–12–77

/s/ Dect. Sgt. C. P. Stanley
/s/ Gary A. Cook"

Formal charges were filed against Rihl on August 15, 1977. The two–count information consisted of one count charging possession of marijuana, and one count charging possession of hashish. A second information adding counts III and IV, for which Rihl was subsequently convicted, was filed on November 28, 1977. The offenses alleged in counts III and IV have greater potential penalties than those alleged in counts I and II.

In denying Rihl's Motion to Dismiss, the trial court construed the second use of the word "charged" in the agreement to mean "chargeable", found the substance of the agreement to be that no charges would arise from the controlled substances found at Rihl's home, noted no such charges had been filed, and entered an order on its own motion prohibiting any reference during trial to the agreement or what was found in Rihl's home.

■ In support of his public policy argument Rihl relies upon authorities with little, if any, relevance to this case. Each of the cases cited involved at least three factors not present here: 1) the involvement of the prosecutor; 2) at least nominal approval by the court; and 3) some detriment to the defendant by the State's failure to abide by

its bargain. *Butler v. Florida* (Fla.App. 1969) 228 So.2d 421 (State refused to dismiss as per agreement when defendant passed a polygraph test). *State v. Davis* (Fla.App.1966) 188 So.2d 24 (facts similar to *Butler*); *State v. Ashby* (1964) 43 N.J. 273, 204 A.2d 1 (acceptance of agreement by temporary judge revoked by regular judge after defendant began performance). Here, the agreement is between the arresting officers and Rihl; the prosecutor did not become aware of it until shortly before trial.[7] Similarly, the court was not informed of the agreement until the day of trial. Finally, Rihl suffered no detriment by turning over the drugs at his home to the police: no evidence of the drugs was introduced at trial; no charges relating to those drugs were filed against him; and the evidence in the Record is quite clear that the prosecutor, once he learned of the agreement, had no intention of ever filing charges based upon the drugs found at Rihl's home. In short, the factors which may justify the equitable enforcement of an agreement between a representative of the State and a defendant on public policy grounds simply are not present here. While it is true the offenses for which Rihl was convicted carry a greater penalty than those he was originally charged with, it is also abundantly clear that the grounds for those charges existed before the six o'clock deadline stated in the agreement.[8]

■ It is also apparent that the trial court correctly construed the writing signed by Stanley and Cook. The substance of the agreement, ascertainable from the language used, is that Rihl would incur no criminal liability for the drugs found at his home. The construction Rihl supports is not only contrary to the more reasonable

---

7. The authority of police officers to enter into a binding agreement or to grant immunity is not before us. *But see State ex rel. Spencer v. Criminal Court of Marion County* (1938) 214 Ind. 551, 15 N.E.2d 1020.

8. It is this lack of detriment to the defendant which also distinguishes this case from *Ashby v. State* (1976) 265 Ind. 316, 354 N.E.2d 192. In *Ashby* the defendants were coerced into confessing to the crime of inflicting injury in the

course of a robbery by a police officer who had represented that their punishment would be mitigated as a result of the guilty pleas. The defendant's statements were later introduced at trial and the defendants were sentenced to life imprisonment after their conviction. In contrast, as stated above, neither the agreement nor the substances seized at Rihl's home were introduced at trial.

interpretation but would also lead to absurd results. Since Rihl was not charged with anything until August 15, 1977, all criminal charges would have to be dismissed. Read literally the construction sought by Rihl would grant permanent absolution for all future sins against society in return for one not–so–unselfish act.

We find no error in the trial court's denial of Rihl's motion to dismiss.

The judgment is affirmed.

### IV.

 Rihl's final contention is that the trial court erred in imposing consecutive sentences. We agree, and remand this case to the Hamilton Circuit Court for action consistent with this section of our opinion.[9]

It is the law in Indiana that consecutive sentencing is not proper unless specifically authorized by statute. *Hawkins v. Jenkins* (1978) 268 Ind. 137, 374 N.E.2d 496; *Baromich v. State* (1969) 252 Ind. 412, 249 N.E.2d 30. Although the statute in effect when Rihl was sentenced vests authority in the trial court to impose either consecutive or concurrent terms,[10] the law in effect when the crimes were committed is controlling. *Springer v. State* (1979) Ind., 393 N.E.2d 131, 135; *Shelton v. State* (3d Dist.1979) Ind.App., 390 N.E.2d 1048, 1051; Acts of 1977, Pub.L. 340, § 150, p. 1611. Since the law in effect on August 12, 1977, authorized consecutive terms only in a limited number of instances not present here, *see, e. g., Baromich v. State, supra,* 249 N.E.2d 30, it was error for the trial court to order Rihl's terms to run consecutively.

9. The State argues this allegation of error was waived by Rihl's failure to object at the time of sentencing. It is well settled that a sentencing error may be raised for the first time on appeal. *Lewandowski v. State, supra,* 389 N.E.2d at 708; *Kleinrichert v. State* (1973) 260 Ind. 537, 297 N.E.2d 822.

10. I.C. 35–50–1–2 (Burns Code Ed.1979) (effective Oct. 1, 1977), provides:
"Consecutive and concurrent terms.–(a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

Rihl's conviction is affirmed, but the case is remanded so that the error in sentencing can be corrected.

BUCHANAN, C. J., and SHIELDS, J., concur.

(b) If a person commits a crime:
(1) After having been arrested for another crime; and
(2) Before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime;
the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed."
*See also* I.C. 35–50–1A–7 (Burns Code Ed. 1979).