David WATT and Donna Senteney,
Appellants (Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2-1178A382.

Court of Appeals of Indiana,
Second District.

Nov. 3, 1980.

Kenneth C. Kern & Associates, Kenneth C. Kern and Hart E. Meyer, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendants David Watt (Watt) and Donna Senteney (Senteney) appeal their convictions for possession of a controlled substance (marijuana),[1] challenging the trial court's denial of their Motion to Suppress, admission of certain testimony, and sufficiency of the evidence.

We affirm.

1. Ind.Code § 35-48-4-11 (1977) (Indiana Uniform Controlled Substances Act, as amended).

## FACTS

The facts most favorable to the State are:

In January, 1978, the Indianapolis police sent a "confidential informer" to Watt's home at 3050 Meredith Avenue, to make a "controlled buy" of marijuana. The informer was searched and given money prior to his entrance into Watt's home, and he returned with the controlled substance. Police Officer Gary Walton (Walton) then prepared an affidavit which read:

> ... [T]hat [Walton] believes and has good cause to believe that Marihuana Cannabis Sativa, the possession of which is unlawful, is in the possession and under the control of Dave Watt living at 3050 Meredith Ave., Indianapolis, Marion County, Indiana. The basis for this affiants belief is that a controlled buy of Marihuana Cannabis Sativa was made by a confidential informant from Dave Watt at the above address with in [sic] the past (72) hours form [sic] January 4, 1978. The informant was searched and given U.S. Currency by myself and observed knocking on the front door and the door opened from the inside and the informant walk inside, of the above address. Approximately five minutes later the informant returned with a quanity [sic] of Marihuana Cannabis Sativa. A preliminary field test by myself found the substance to be Marihuana Cannabis Sativa.
>
> Based on the above information I request this search warrant be issued or [sic] 3050 Meredith Ave., Indianapolis, Marion County, Indiana which is described as a one story double dwelling, white frame with a white roof and orange brick front porch. 3050 is the residence on the west side of double. The residence consists of Liveing [sic] room, dining room, kitchen, bedrooms, bathroom. I request this search to include all rooms, closets, drawers, storage areas, and any place Marihuana Cannabis Sativa can be hidden or concealed also for the person of Dave Watt.

Based upon this affidavit, a search warrant was issued.

The search was conducted on January 4, 1978. Walton and other police knocked at the door of the residence and were admitted by Senteney. The police found Watt in the kitchen and asked him to come to the living room, where the search warrant was read to both defendants. A search of the entire residence revealed marijuana in a dresser drawer and in a box on top of the dresser in the single bedroom; the dresser drawer also contained male underclothing. Clothes of both defendants were in the bedroom. Lysergic acid diethylamide (LSD) was found in the refrigerator, but a count for possession of LSD was later dismissed. The police arrested the two defendants and read them their *Miranda* rights. After obtaining clothes from the single bedroom, the defendants were taken to the police station, where each gave an address of "3050 Meredith" during the "booking" procedure.

Defendants filed a Motion to Suppress the evidence as illegally seized. After a hearing, the motion was denied. Subsequently they filed a motion to reconsider the motion to suppress, and, after another hearing, the trial judge again denied the motion. The defendants were tried by the court without intervention of a jury and were convicted.

### ISSUES

Watt and Senteney present three issues: [2]
1. Did the trial court err in refusing to suppress the evidence as illegally seized?
2. Did the court err in admitting into evidence the statements defendants gave regarding their address when they were "booked"?
3. Was the conviction of each defendant supported by sufficient evidence?

### DECISION

*ISSUE ONE*—Did the court err in refusing to suppress the evidence as illegally seized?

*PARTIES' CONTENTIONS*—Watt and Senteney claim the evidence should have been suppressed because the search warrant affidavit stated facts based on hearsay, yet the affidavit does not disclose any proof of the credibility of the hearsay informant; thus, they contend, the warrant was invalid and the search was illegal. They further contend that the police informant's conduct in the home was itself a "search" unsupported by a warrant and hence illegal, rendering the subsequent search illegal.

The State counters that the warrant was properly issued, being supported by probable cause, so the police search was legal. Although arguing that the evidence was purchased rather than seized, the State does not respond to the contention that the original contact with the home constituted a warrantless search.

*CONCLUSION*—The initial entry of the informant was apparently a "controlled buy" and therefore not a search; the subsequent search by police was pursuant to a warrant adequately supported by probable cause. Defendants made no showing that the initial entry was illegal. Therefore, the court did not err in refusing to suppress the evidence seized.

The defendants' argument is seductive at first blush, but a closer scrutiny shows it bespeaks a misunderstanding of several basic principles of law.

■■ What must be shown to secure a search warrant is probable cause. U.S.C.A. Const. Amend. IV; Ind. Const. Art. I, § 11; *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634; *Ferry v. State* (1970), 255 Ind. 27, 262 N.E.2d 523; *Johns v. State* (1968), 251 Ind. 172, 240 N.E.2d 60. "Probable cause" for a search warrant, as for an arrest warrant, does not mean a prima facie case against any defendant. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. *Accord, United States v. Ventresca* (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *Ferry, supra* 262 N.E.2d at 529 (Givan,

---

**2.** This formulation of the issues is designed to condense, simplify, and clarify those presented by the Appellants in their brief.

J., dissenting). Moreover, the probable cause which must be shown for a search warrant is not the same as the probable cause which must be shown for an arrest warrant. *See generally* Berner, *Search and Seizure : Status and Methodology,* 8 Val.U. L.Rev. 471, 493–94 (1974). What must be "probable" for a search warrant is that (1) the item for which the search is conducted is in a particular place, and (2) the item is crime–related. *See Zurcher v. Stanford Daily* (1978), 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525. *See also Snedegar v. State* (1926), 198 Ind. 182, 150 N.E. 367, 368. *See generally* Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349 (1974); Comment, 28 U.Chi.L.Rev. 664, 687 (1961). Obviously, when the item is contraband it is definitionally crime–related. It is "property, the possession of which is unlawful" as contemplated by Ind.Code § 35–1–6–1.

How probable cause is to be shown is dictated by statute. Ind.Code § 35–1–6–2 [as amended, 1977] states:

(a) Except as provided in subsection (c) of this section, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished.

.    .    .    .    .

(c) In lieu of an affidavit or in addition thereto, a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits in a nonadversary hearing before a judge; the proceeding shall be recorded or transcribed by a court reporter or recording device.

*Id.* Thus, as the statute makes clear, there are alternative ways of showing probable cause. *Cf. State ex rel. French v. Hendricks Superior Court* (1969), 252 Ind. 213, 247 N.E.2d 519, 526 (arrest warrant). If the facts are known to the affiant, he need not establish the credibility of any person. However, facts obtained through illegal procedures violating constitutional rights may not form the basis of probable cause. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Ashley v. State* (1968), 251 Ind. 359, 241 N.E.2d 264, 268; *Manson v. State* (1967), 249 Ind. 53, 229 N.E.2d 801, *cert. den.* 390 U.S. 995, 88 S.Ct. 1198, 20 L.Ed.2d 95. *See also Rohlfing v. State* (1949), 227 Ind. 619, 88 N.E.2d 148, 149.

In determining whether probable cause exists for the issuance of a search warrant, the court asked to grant the warrant must make its decision based upon the facts stated and the *rational inferences* to be drawn therefrom. *Berner, supra* at 495; LaFave, *Search and Seizure : The Course of True Law ... Has Not ... Run Smooth,* 1966 U.Ill.L.F. 255, 259, n. 40. It is to make a "common–sense" reading of the entire affidavit. *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *United States v. Ventresca* (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684.

A common–sense approach means that the magistrate is not required to speculate as to every conceivable possibility that the facts stated were somehow obtained through illegal measures. Were the rule otherwise, no search warrant would ever issue if the judge had any imagination whatsoever. Similarly, the State by its affiant is not required to formulate the affidavit in such a way as to rule out every conceivable scenario which might be envisioned by an imaginative court. *See Ventresca, supra,* 85 S.Ct. at 746. The affidavit

is made upon oath. Ind.Code § 35–1–6–1. This provides some assurance that the facts stated are true, *see Riddle v. State* (1971), 257 Ind. 501, 275 N.E.2d 788, and the court asked to issue the warrant is to give them a reasonable interpretation in rendering its decision. The magistrate is not required to assume the police committed perjury. *See McCray v. Illinois* (1967), 386 U.S. 300, 87 S.Ct. 1056, 1063, 18 L.Ed.2d 62.

▮ This is not to say, however, that the affidavit may not later be attacked. *See Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667; *Phelan v. State* (1980), Ind., 406 N.E.2d 237; *Mata v. State* (1932), 203 Ind. 291, 179 N.E. 916. Because the request for a warrant is necessarily made *ex parte,* the most basic notions of due process require that such an attack be permitted. *See Franks, supra.* A defendant may attack the affidavit as not showing probable cause on its face, as tainted by illegality, or as containing false statements made knowingly, intentionally, or with reckless disregard for the truth.[3] And when the affidavit is so attacked, the State may not introduce other evidence to support its contention that probable cause existed at the time of the decision on the affidavit. *Ashley, supra* 241 N.E.2d at 268. If the affidavit is found to be defective, evidence gained as the result of the search must be suppressed. *McCurry v. State* (1967), 249 Ind. 191, 231 N.E.2d 227.

▮ Nonetheless, once the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains. *Franks, supra. See generally,* 2 J. Varon, Searches, Seizures and Immunities 876 (1974). It is therefore incumbent upon the defendant to make some showing that the facts stated were untrue or tainted by illegality, if the reasonable inferences to be derived from the common–sense reading of

the affidavit are that no such falsehood or illegality exists. Reviewing courts, including the trial court on a motion to suppress, must pay substantial deference to the magistrate's determination of probable cause. *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Riddle, supra.* Thus, it is entirely proper to require of one challenging the legality of a search, in order to suppress evidence, that he establish an invasion of his rights. *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 731, 4 L.Ed.2d 697.

In light of these principles, we turn to this case. The facts stated in the affidavit provided reasonable cause for the issuance of the warrant to search the house, inasmuch as they showed it was probable that (1) the item for which the search was to be conducted was in the house, and (2) the item, marijuana, was crime–related. Furthermore, the affidavit is not defective as facially containing false statements, made knowingly, intentionally, or with reckless disregard for the truth.

Watt and Senteney do contend the affidavit is otherwise defective because it is tainted by illegality–the statements made therein were the product of an initial unlawful seizure.

▮ Watt and Senteney cast their lot with *Stinchfield v. State* (1977), Ind.App., 367 N.E.2d 1150. This case and *Stinchfield* are distinguishable. In the latter this court concluded the record before it revealed "a warrantless seizure occurred on the defendant's premises." *Stinchfield* at 1154. Therefore, as a warrantless seizure, the burden fell upon the State to present evidence to justify the warrantless seizure. In this case a warrantless seizure also occurred in the sense that a controlled substance was obtained without a warrant. However,

---

**3.** Prior to the United States Supreme Court's decision in *Franks v. Delaware,* Indiana cases had disposed of veracity challenges on grounds that the misstatements, if any, were immaterial, unintentional, or not made by the affiant himself. *See Grzesiowski v. State* (1976), Ind. App., 343 N.E.2d 305; *Moore v. State* (1974), 159 Ind.App. 381, 307 N.E.2d 92. *But see Seag-*

*er v. State* (1928), 200 Ind. 579, 164 N.E. 274 (no challenge permitted). For a more recent veracity–challenge case, see *Phelan v. State* (1980), Ind., 406 N.E.2d 237.

Veracity–challenge cases are similar to others in which the defendant attacks the affidavit on a motion to quash. *E. g., Mata v. State* (1932), 203 Ind. 291, 179 N.E. 916.

there the similarity between this case and *Stinchfield* ends. Rather, this record falls within those cases, discussed in *Stinchfield*,

> "wherein the informant, or undercover agent, enters a suspect's house *on the latter's invitation*, and then *purchases*, or otherwise acquires contraband *with the consent* of the suspect (whether or not the suspect is cognizant of the informant's subterfuge). In such cases the informant usually delivers the acquired substance to an officer who then might procure a search warrant for the suspect's home. See *Mills v. State* (1975), Ind.App., 325 N.E.2d 472, and cases therein cited. However, the record of the instant case, in contrast to *Mills*, supplies no information regarding the propriety of the informant's conduct while within Stinchfield's home, and we will not speculate on his manner of obtaining the drugs in question."

367 N.E.2d at 1153. (Emphasis in original). The record supplies the information regarding the propriety of the informant's conduct while within the home of Watt and Senteney by asserting the "seizure" occurred pursuant to a controlled buy, a circumstance not appearing in the *Stinchfield* affidavit. A seizure resulting from a controlled buy is not an illegal seizure. *Schwartz v. State* (1978), Ind.App., 379 N.E.2d 480. Thus, Watt and Senteney failed to mount a successful attack against the warrant.

▮ Placing the burden upon the defendant to attack a warrant is in line with the Supreme Court of the United States, which on countless occasions has safeguarded fourth-amendment rights by invalidating searches. *Franks* stands for the proposition that when the affidavit on its face, together with all reasonable inferences, shows valid probable cause, a defendant bears the burden of attacking it by evidence outside the affidavit. Placing this burden on the defendant is consonant with the Supreme Court's dictate that "it is entirely proper to require of one who seeks to challenge the legality of a search . . . that he establish that he was the victim of an invasion of privacy." *Jones*, 80 S.Ct. at 731. *Accord, Chin Kay v. United States* (9th Cir. 1972), 311 F.2d 317; *Batten v. United States* (5th Cir. 1951), 188 F.2d 75. They did shift the burden of going forward by showing the initial seizure was warrantless. However, the evidence of the controlled buy fulfilled the State's responsibility of going forward by showing a seizure without the protection of the 4th Amendment. Watt and Senteney were, therefore, unable to meet their ultimate burden of showing an illegal search.

▮ Defendants further argue that the acts of the informant as they are stated in the affidavit constituted non-verbal hearsay, or conduct as hearsay, and therefore the affiant, Walton, was required to establish the credibility of the informant. The argument is misconceived, as this was not conduct as hearsay. Conduct as hearsay involves an implied assertion by the out-of-court asserter. *See generally* McCormick, Evidence § 250; Finman, *Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence*, 14 Stan.L.Rev. 682 (1962). It means that the conduct is the result of a *thought*, and through such conduct, that *thought* is being used as proof of the matter impliedly asserted. *See generally* Tribe, *Triangulating Hearsay*, 87 Harv.L.Rev. 957 (1974). The facts stated by Walton regarding the informant's conduct here were not premised on any implied assertion by the informant. *See Mills v. State* (1978), Ind.App., 379 N.E.2d 1023, 1026.

Moreover, it was not the *conduct* of the informant that was relevant to a determination of probable cause here. The relevant facts—that the item was in the house and was crime-related—were established by the *presence* of marijuana on the person of the informant when he returned from the house, it having been absent when he entered the house. Therefore, Walton stated probable cause within the statute based on *facts known to him personally*. He did not have to establish the credibility of the

informant.[4]  *See Mills, supra.  See also* Ind. Code 35–1–6–2(a).

For these reasons the affidavit, though not exemplary, was adequate to show probable cause for a search of the Watt residence.  On the basis of the affidavit's stated facts, reasonable inferences and presumption of validity, the trial court did not err in denying the motion to suppress.

*ISSUE TWO*—Did the court err in admitting into evidence the statements defendants gave regarding their address when they were "booked"?

*PARTIES' CONTENTIONS*—Watt and Senteney claim that because their declarations as to their address constituted substantive evidence of possession, and the only evidence of such possession, the court erred in admitting the testimony because the defendants were not given *Miranda* warnings immediately prior to the booking questions, nor did they have counsel at that time.  The State responds that the court did not so err because (1) preliminary information is not subject to *Miranda* requirements; (2) Defendants had been given *Miranda* warnings at the time of arrest at the residence;  and (3) Defendants' connection with the premises was shown by other evidence.

*CONCLUSION*—The court did not err in admitting the testimony.

▇▇▇▇ Defendants' right-to-counsel argument is unavailing.  The Sixth Amendment right to counsel, apart from the requirements of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, attaches only after a "critical stage" of the proceedings has been reached.  *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32

L.Ed.2d 411;  *Edwards v. State* (1976), 265 Ind. 239, 352 N.E.2d 730.  No such critical stage had been reached in this case;  no formal charge had yet been filed.  We therefore turn to the question of *Miranda* application.

Various courts have considered the question whether the dictates of *Miranda* pertain to booking questions, and have determined that they do not.  *E. g., United States v. Prewitt* (7th Cir. 1977), 553 F.2d 1082;  *United States v. LaVallee* (2d Cir. 1975), 521 F.2d 1109 (holding harmless error, alternatively);  *Hill v. State* (1978), Ind., 371 N.E.2d 1303.

▇▇▇▇ Seeking to distinguish such holdings, however, Watt and Senteney contend their case presents a more serious imperative for *Miranda* application.  They point out that the evidence they divulged was *substantive evidence* of guilt.  Yet this question appears to have been decided by the Indiana Supreme Court in *Hill, supra.*  That case represents a strong declaration of admissibility, for the defendant's information there was his age—an *essential element* of the crime charged, and the *only* evidence presented on that element.  The Court in *Hill* stated that *Miranda* is applicable only to "custodial interrogation."  Booking procedure does occur while the defendant is in "custody," but it does not constitute "interrogation."  *See Mallory v. United States* (1957), 354 U.S. 455, 77 S.Ct. 1356, 1 L.Ed.2d 1479.[5]  Such information is comparable to the giving of fingerprints, handwriting exemplars, and blood samples.  *Id.,* 91 S.Ct. at 1540;  *LaVallee, supra* at 1112.

For these reasons we find no error in admitting the testimony.

---

4. A portion of Defendants' argument in this regard is their assertion that the police admitted in court that the "informant" was not trustworthy.  In support of this claim, Watt and Senteney point to testimony during which Walton was asked whether the agent referred to in the affidavit was "a reliable, creditable informant."  The officer responded, "No, he is not a creditable informant.  This was a controlled buy."  We believe this testimony can be read as showing the police realized a distinction between situations in which the *word* of an informer is relied upon, and those in which *personal observation* by police is used for probable cause.  In fact, Walton stated that the controlled buy was "the basis for the warrant."  This case, being a "controlled buy" in which the "informant" gave no verbal information used in the affidavit, fell within the latter category.

5. In *Mallory,* the Court stated: "The arrested person may, of course, be 'booked' by the police."  77 S.Ct. at 1359.

*ISSUE THREE*—Was the conviction of each defendant supported by sufficient evidence?

*PARTIES' CONTENTIONS*—Defendants' sufficiency argument is a three–pronged attack on (1) proof that 3050 Meredith was their residence; (2) proof of constructive possession; and (3) proof that the substance seized was "marijuana" within the meaning of the statute. The State contends the evidence was sufficient to establish all elements of guilt.

*CONCLUSION*—The evidence was sufficient to sustain the conviction.

In reviewing for sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of the witnesses. *Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349. We will look only to the evidence most favorable to the State, along with all reasonable inferences to be derived therefrom. *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509.

■ As discussed earlier, the evidence shows that both defendants lived at 3050 Meredith. Defendants' argument regarding proof that the substance seized was marijuana was not included in either the Motion to Correct Errors or the Appellants' Brief; it was raised only in their Reply Brief. That argument is therefore waived pursuant to Ind. Rules of Procedure, Trial Rule 59 and Ind.R.App.P. 8.3(A). Consequently, we address only the remaining argument concerning proof of constructive possession.

■ In order to establish possession of a controlled substance, proof of actual possession is not required. *Johnson v. State* (1978), Ind.App., 376 N.E.2d 542; *Phillips v. State* (1974), 160 Ind.App. 647, 313 N.E.2d 101. Nor must the possession be exclusive. *Ludlow v. State* (1973), Ind.App., 302 N.E.2d 838, 843, *rev'd on other grds*, 262 Ind. 266, 314 N.E.2d 750. Non–exclusive, constructive possession is sufficient. *See Martin v. State* (1978), Ind.App., 372 N.E.2d 1194.

Our Supreme Court has defined constructive possession as "an intent and capability to maintain control and dominion" over the contraband. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557, 558. *Accord, Edwards v. State* (1979), Ind.App., 385 N.E.2d 496; *Hutcherson v. State* (1978), Ind.App., 381 N.E.2d 877; *Mills v. State* (1978), Ind. App., 379 N.E.2d 1023.

■ Proof of a possessory interest in the premises in which a controlled substance is found is adequate to show the capability to maintain control and dominion over the substance. *Hutcherson, supra*; *Mills, supra*; *Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484. However, when a person does not have *exclusive* possession of the premises, "mere presence" in the place is not sufficient proof of intent to possess the substance. *See Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412. The element of intent is proved by evidence of the accused's knowledge of the nature of the substance and its presence. *Thomas, supra*; *Mills, supra*; *Hutcherson, supra*. Although such intent may be inferred when possession of the premises is exclusive, the inference must be supported by additional circumstances if possession of the premises is not exclusive. *Martin, supra*; *Hutcherson, supra*.

■ Among the additional circumstances that will support an inference of intent to control the contraband is close proximity of the contraband to items owned by the accused. *See Martin, supra* at 1201 (Buchanan, J., concurring). In this case, police testified that the drawer in which some of the marijuana was found also contained male underclothing, and it is reasonable to infer that these items belonged to Watt. Thus, the evidence was sufficient to prove Watt's possession.

A more formidable question is posed by the issue of Senteney's possession. We conclude that to reverse her conviction would require us to reweigh the evidence.

The drawer in which the marijuana was found was partially open. The box in which more marijuana was found was not the least way concealed; it was atop the dresser in the bedroom occupied by each

defendant. While Walton testified that the clothes in the drawer were those of a male, he also testified that, where he found the marijuana, he "found clothing for a male and clothing for a female." This testimony does provide an additional circumstance supporting an inference of Senteney's possession, and makes this case distinguishable from *Martin, supra,* in which there was *no* evidence of proximity of the accused's clothing to the contraband found in a bureau. In contrast to *Martin,* also, there is no evidence of any other person's having access to the joint bedroom.

In *Martin* we observed that joint possession of a bedroom, *without more,* does not compel conviction. *Martin, supra* at 1199. Left open was the question of "whether the marital relationship would support an inference of knowledge under different circumstances." *Id.* at n. 8. The cases cited included a common–law marriage and a cohabitation situation. *Id.* at n. 9. Under the facts here, a different conclusion is warranted, not only because of the proximity of Senteney's clothing, but for another reason as well.

In *Ledcke v. State, supra,* our Supreme Court held that in a manufacturing situation, the accused's knowledge of the presence of the substance could be inferred, even though he was not a tenant of the premises. The reasoning behind the decision, as explained by Justice Hunter, was that illegal activity may be *obvious* enough to support that inference. *Ledcke, supra,* 296 N.E.2d at 416. The instant case is not a "manufacturing" situation, but does involve a residence in which marijuana was being sold. The testimony regarding the activity of the informant does not show whether Senteney was present when the controlled buy was made, but it does show that the residence was used to conduct illegal business. This circumstance renders the present case distinguishable from those in which only the *private,* secret possession of marijuana by one resident can be inferred.

*Ledcke* concluded that in a place where illegal activity occurs, a rebuttable inference of knowledge arises. If this is true as

to a non–resident, as in *Ledcke,* then surely it should apply to a resident such as Senteney. We comment that our Supreme Court in *Thomas, supra,* emphasized the fact that the accused was *in her own home* when police found the contraband there. More recently, in *Pier v. State* (1980), Ind.App., 400 N.E.2d 209, the Fourth District noted the "common thread" running through Indiana decisions upholding findings of constructive possession was the presence of the defendant when the contraband was found. *Id.* at 210–211. And certainly it is one factor to be considered. *Ledcke, supra,* 296 N.E.2d at 417. Here we have presence, residency, proximity of clothing, and a place where a controlled buy was made earlier. We also have testimony that a box containing marijuana was on top of a dresser, not concealed. The sum of these circumstances buttresses an inference of knowledge on Senteney's part.

The convictions are affirmed.

SULLIVAN, J., concurs, with opinion.

SHIELDS, J., concurs in part and dissents in part.

SULLIVAN, Judge, concurring:

I concur in the affirmance of both convictions. With reference to Senteney, however, I do so only because certain evidentiary elements missing in *Martin v. State* (2d Dist. 1978) Ind.App., 372 N.E.2d 1194, are present in this case. More specifically, contraband was found in a box on top of the bureau located in the only bedroom in the house. That evidence permitted the trier of fact to infer that Senteney was in possession of the marijuana.

Notwithstanding the weakness or implausibility of the isolated statement by the police officer that the box was found on top of the dresser, the trial court was entitled to believe that statement as opposed to the officer's earlier and repeated statements that the only box found was located in a drawer. The fact that I would not have given credence to the isolated statement does not permit me to say as a matter of law that the trial judge could not have believed it.

In conclusion I must take issue with Judge Buchanan's analysis of and reliance upon *Ledcke v. State* (1973) 260 Ind. 382, 296 N.E.2d 412. As he correctly observes, *Ledcke* involved a "manufacturing situation", i. e., marijuana virtually covered the kitchen floor and was being processed and dried in the oven. The case does not support the broad generalization made by Judge Buchanan that the *Ledcke* court had concluded "that in a place where illegal activity occurs, a rebuttable inference of knowledge arises."

SHIELDS, Judge, concurring in part and dissenting in part:

I dissent from the affirmance of Senteney's conviction and in so doing direct the majority's attention to a decision of this district, *Martin v. State*, (1978) Ind.App., 372 N.E.2d 1194, which contains an excellent discussion of constructive possession.

"In *Thomas v. State* (1973) 260 Ind. 1, 291 N.E.2d 557, 558, our Supreme Court defined constructive possession as the 'intent and capability to maintain control and dominion' over the substance. The opinion states that the requisite intent can be inferred from the voluntary commission of the act. In this regard the evidence must establish knowledge both of the item's presence and of its forbidden character."

.    .    .    .    .

"As to the quantum of proof necessary to sustain a conviction for knowing possession, evidence that a person has *exclusive* control of the premises permits the inference that he has constructive possession of any drugs found on those premises. The element of knowledge can reasonably be inferred from evidence of exclusive control alone. *E. g., Phillips v. State, supra.*

"In the instant case, however, we must determine whether the evidence was sufficient to prove constructive possession when the defendant, Linda Martin, was not in exclusive control of the area where the controlled substances were found. . . .

"These circumstances present greater evidentiary difficulties because *knowing* possession on the part of Linda Martin cannot be reliably inferred from evidence of her joint access and control of the premises alone. Mere presence in the vicinity or association with one having possession of drugs is not sufficient to sustain a conviction. . . . [S]ome additional, independent proof is necessary to pronounce as reasonable an inference that Linda Martin individually, or together with others, knowingly possessed the contraband.

"Accordingly, an increasing number of jurisdictions apply the following rule: Where the accused did not have exclusive control of the premises, it may not be inferred that he knew of the presence of the drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. There must be additional evidence, apart from that of defendant's nonexclusive control of the premises, to permit an inference of knowledge.

"In Indiana this nonexclusive possession rule was explicitly adopted in *Greely v. State, supra* (holding that the evidence failed to establish Greely's knowledge of the presence of drugs in his backyard), and is supported by other cases. In *Thomas v. State, supra*, 291 N.E.2d at 559, the Supreme Court quoted with approval the following language from *Feltes et al. v. People* (1972) 178 Colo. 409, 498 P.2d 1128, 1131:

'A conviction of illegal possession may be based upon evidence that the marijuana, while not found on the person of the defendant, was in a place under his dominion and control. [Citations omitted.] If possession is established, knowledge of the character of the drug and the fact that it is possessed can be inferred therefrom.'

"The next two sentences from *Feltes*, the latter of which is omitted from the *Thomas* opinion, makes it clear that the above quoted language applies to exclusive possession only. With respect to nonexclusive possession, the Colorado court stated:

'Possession need not be exclusive and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control thereof. [Citations omitted.] However, where a person is in possession, but not in exclusive possession of the premises, it may not be inferred that he knew of the presence of marijuana there and had control of it unless there are statements or other circumstances tending to buttress the inference. [Citations omitted.]'"

*Martin* at 1197–8 (some citations omitted, footnotes omitted). The court then affirmed Linda Martin's possession conviction because it found additional evidentiary factors to link her with the drugs found in the top drawer of the bedroom dresser.[1] However, it reversed the conviction of Linda's husband, James, because the only corroborating evidence was "that the bedroom was shared by the Martins as husband and wife." *Martin* at 1199.

The situations of James Martin and Donna Senteney are strikingly similar. Senteney and Watts shared the single bedroom. Her clothing was in that bedroom.[2] However, there was a lack of any other corroborating evidence. Senteney admitted the police officers to the residence upon their request, did not attempt to flee, nor did she engage in any other furtive conduct. Further, the record is totally devoid of any suggestion that she was present at the time of the initial controlled buy from Watt. Thus, the only evidence other than joint access and control of the bedroom from which Senteney's knowledge of the nature of the substance and its presence can be inferred is where the substance was found. And indeed, it is this evidence upon which the majority relies:

"The drawer in which the marijuana was found was partially open. The box in which more marijuana was found was not the least way concealed; it was atop the dresser in the bedroom occupied by each defendant. While Walton testified that the clothes in the drawer were those of a male, he also testified that, where he found the marijuana, he 'found clothing for a male and clothing for a female.'"

The foregoing is derived from the following which is all the testimony concerning the whereabouts of the controlled substance:

"Q   Where in the residence did you find the drugs?

"A   ... [I] found a quantity of Marijuana in a dresser drawer, in a wooden box.   I believe that was it."

R. 185.

---

1.     "The record before us does disclose that additional evidentiary factor to link Linda Martin with the drugs found in the master bedroom.   Upon learning that police officers were at the apartment for the purpose of executing a search warrant, she denied them entry.   She was then discovered fleeing down the hallway and subsequently found standing in the bathroom with the water running in the sink and commode.   The houseguest, who was the only other person in the apartment at the time, was engaged in similar furtive activity.   From such suspicious behavior, the trier of fact was entitled to infer guilty knowledge, i. e., that Linda Martin knew of the presence of the controlled substances.   *Cf., Von Hauger v. State* (1970) 254 Ind. 297, 258 N.E.2d 847."

*Martin v. State,* (1978) Ind.App., 372 N.E.2d 1194, 1198–9.

2.     "A   ... [W]hen we got ready to leave the residence Miss Senteney went to the bedroom and got some shoes and some clothing out of the closet and changed clothing."

R. 185.

"Q   Okay.   What items of clothing did you see in the bedroom where you found the—or, what items, if any, did you find in the bedroom where you found this suspected marijuana?

"A   I found clothing for a male and clothing for a female, shoes, coats, normal items of clothing.

"Q   Okay.   What do you mean by normal items of clothing?

"A   Shirts, blouses, shoes, jackets, just normal casual wear.

"Q   Was there more than enough for a person to just change into one (1) outfit there?

"A   Yes, there was.

"Q   At any time during your stay on the premises did the codefendant, Donna Senteney, go to the bedroom and obtain any clothing?

"A   Yes, she did."

R. 254.

"Q  These aren't readily separable, Officer, but I wonder if you could look at what is marked State's Exhibit Two (2) and ask you to identify that, please?

"A  That's a plastic bag, heat–sealed envelope, which I inserted evidence that I found in David Watt's bedroom in a box in a dresser drawer."

R. 236.

"Q  May I hand you what has been marked State's Exhibit Four (4) and ask you to identify that, please?

"A  That's also a clear plastic envelope in which I inserted paraphenalia (sic) and suspected drugs, or, marijuana, that was found in David Watt's bedroom, also in a box in a dresser drawer.  And I heat–sealed it myself."

R. 238.

"Q  Okay.  And you're saying that— where are you saying, then, that you found State's Exhibit Two (2), exactly, Officer?

"A  This was also found in the bedroom at thirty–fifty (3050) Meredith in a box in a dresser drawer.

"*Mr. KERN:* I'm sorry, I didn't hear the end of his statement.  In a box?

"*THE COURT:* In a dresser drawer.

"A  In a box and, also, in the dresser drawer.

"*MR. KERN*: You're referring to what exhibit now?

"A  Four (4).

"*MR. KERN*: Four (4)?  Part of that was found in a box and part in a dresser drawer, is that your statement?

"A  Yes, it was.

"*MR. KERN*: Okay.

"Q  Where was the box?

"A  The box was on the dresser.

"Q  On the dresser?  Was it open?

"A  The box was not, no.

"Q  It was not open.  What items of clothing, if any, were in the dresser or surrounding area where you found this marijuana?

"A  There were tee–shirts, underwear, socks.

"Q  Okay.

"A  Underclothing.

"Q  Were they male or female?

"A  Where the drugs were found they were male."

R. 253–5.

"Q  Now, Officer, the dresser drawer was closed, I presume?

"A  The dresser drawer where the drugs were found was partially open."

R. 265.

The testimony is confusing.  The officer does clearly testify Exhibit Two (2) was found in the bedroom in a box in a dresser drawer.  As to Exhibit Four (4) the officer testifies it was found in the bedroom (1) in a box in a dresser drawer and (2) partly in a dresser drawer and partly in a closed box on the dresser.  However, he clearly states only male clothing was in the dresser or surrounding area where he found the marijuana.

Compelled as we are to examine the evidence most favorable to the State, we resolve the conflict by construing the evidence as showing marijuana was found in the bedroom (1) in a box in a dresser drawer containing only male clothing, (2) in the dresser drawer again containing only male clothing, and (3) in a closed box on the dresser in a "surrounding" of male clothing.  And while the police officer testified the dresser drawer was partially open he did not testify the marijuana was visible through the partially open drawer.  In fact, clearly the marijuana in the wood box would not be visible.  Therefore, without evidence of plain view, Senteney stands in the same shoes as James Martin whose conviction was reversed with a concurring opinion which contains a statement uniquely appropriate to the case before us:

"It should be emphasized that there is sufficient evidence from which the trial judge could infer that James had the ability to maintain control and dominion

over the bedroom in which the drugs were found. Present in the marital bedroom when he arrived were his clothes and twenty–five (25) pairs of his shoes, which was sufficient evidence to create an inference that he was in possession of the bedroom on the day of the raid.

"However, it does appear that Indiana has adopted the rule that if possession of property is *non–exclusive*, the prosecution must bring forth some evidence which would indicate the defendant had knowledge of the drug. *Greely v. State* (1973), Ind.App., 301 N.E.2d 850. If, in addition to non–exclusive possession, there had been flight, *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412, furtive gestures, *Moss v. State* (1975), Ind.App., 333 N.E.2d 141, close proximity by Martin to the contraband, *Thurman v. State* (1974), Ind. App., 319 N.E.2d 151, close proximity of the contraband to items owned by Martin, *see People v. White* (1969), 71 Cal.2d 80, 75 Cal.Rptr. 208, 450 P.2d 600, or if the contraband was in plain view, *Mills v. State* (1975), Ind.App., 325 N.E.2d 472, a conviction might be sustained.

Martin at 1200–1 (concurring opinion).

I would reverse Senteney's conviction but affirm Watt's conviction.