## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 17 2020, 7:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry G. Baugh, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 17, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2978 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable Michael J. Lewis, Judge <br><br> Trial Court Cause No. <br> 84D06-1804-F2-1090 |

**Altice, Judge.**

## Case Summary

[1] Terry G. Baugh appeals his conviction for dealing in methamphetamine, a Level 2 felony, challenging the sufficiency of the evidence. Baugh also claims that his convictions for dealing in methamphetamine and maintaining a common nuisance violate the prohibition against double jeopardy.

[2] We affirm.

## Facts and Procedural History

[3] On March 29, 2018, Terre Haute Police Department Detectives Brian Bourbeau and James Palmer were conducting surveillance of a residence on Seventh Street. The detectives patrolled the block, anticipating that a black Chevrolet S10 truck with an Illinois license plate parked near the residence would leave. The detectives knew that Baugh owned the vehicle, was a habitual traffic offender, and did not have a driver's license. They also learned that Baugh had been selling methamphetamine from this residence.

[4] At some point, the detectives noticed that the truck was no longer parked in front of the Seventh Street residence. However, they saw Baugh driving the truck approximately ten blocks away. The detectives stopped the truck and ordered Baugh from the vehicle. Baugh's son, Terry Baugh Jr. (Baugh Jr.), and Jessica McCullough, who were passengers in the truck, were also told to exit the vehicle.

[5] The detectives arrested Baugh, searched him, seizing 2.99 grams of methamphetamine from his pants pocket. Baugh Jr. was also arrested after the

detectives saw him drop a bag at his feet that was determined to contain methamphetamine mixed with dimethyl sulfone.[1] McCullough was not charged with any criminal offenses and was permitted to leave.

[6] During an inventory search of the truck, the police seized three cell phones. The detectives then returned to the Seventh Street residence and saw McCullough walk inside. McCullough allowed the detectives inside, and she told them that Joshua Baugh was also there. When performing a protective sweep, the detectives noticed a locked door to an upstairs apartment. Both Joshua and McCullough told the detectives that neither one of them had a key.

[7] The detectives obtained a warrant to search the upstairs apartment. During the search, the detectives seized a bag from the bedroom that contained three smaller plastic bags with crystal-like substances that tested positive for methamphetamine. A forensic scientist determined that two of the bags contained a total of 36.73 grams of methamphetamine and the third bag contained a substance weighing 8.45 grams.[2] The methamphetamine had a street value of approximately $4,000.

[8] The detectives also seized a scale, some empty plastic bags, and various documents addressed to Baugh from the apartment. Those documents included

---

[1] Dimethyl sulfone is a commonly used anti-inflammatory agent that is a non-controlled substance.

[2] The third bag, weighing 8.4 grams was not tested, as the aggregate net weight of the other two bags that tested positive for methamphetamine exceeded "any statutory or any legal limit for legal purposes." *Transcript Vol. III* at 81.

a bill from January 2018 and a handwritten card with the name, "Terry G. Baugh," that bore his date of birth and a social security number. *Transcript Vol. III* at 44, 46. They also discovered a rent receipt dated March 7, 2018, with Baugh's name on it. One of the detectives testified that "[n]othing was located in [the] upstairs apartment that belonged to anyone, [other than Baugh]." *Id.* at 69.

[9] A photo on one of the phones that the police had seized from Baugh's truck showed him sleeping on a bed with a pillowcase that matched the pillowcases on the bed in the upstairs apartment. The picture also showed the "same curtain" that was hanging in the apartment when the detectives executed the warrant. *Id.*

[10] On April 4, 2018, the State charged Baugh with dealing in methamphetamine, a Level 2 felony, possession of methamphetamine, a Level 3 felony, maintaining a common nuisance, a Level 6 felony, and operating a vehicle as a habitual traffic violator, a Level 6 felony. The State also alleged that Baugh was a habitual offender.

[11] Following the presentation of evidence at Baugh's jury trial on August 26, 2019, the trial court gave the following instruction regarding the offense of maintaining a common nuisance:

> The Crime of Maintaining a Common Nuisance as charged in Count 3 is defined by law as follows: A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used for the purposes of unlawfully using,

manufacturing, keeping, offering for sale, selling, delivering or financing the delivery of a controlled substance or an item of drug paraphernalia. To convict the Defendant, the State must have proved each of the following beyond a reasonable doubt: Number 1; the Defendant, number 2; knowingly or intentionally, Number 3; maintained a building, structure, vehicle, or other place, number 4; that was used for the purpose of unlawfully using, manufacturing, keeping, offering for sale, selling, delivering or financing the delivery of a controlled substance or item of drug paraphernalia.

*Id.* at 166-67. Baugh was found guilty as charged and was determined to be a habitual offender. At the sentencing hearing on November 21, 2019, the trial court merged the possession of methamphetamine count into the dealing count and sentenced Baugh to twenty years of incarceration. The trial court enhanced the sentence by ten years in light of the habitual offender finding.

[12] Baugh was also sentenced to one-and-one-half years on the maintaining a common nuisance and habitual traffic offender counts. Those sentences were ordered to run concurrently with each other and with the sentence that was imposed on the dealing count, resulting in an aggregate thirty-year term of incarceration. Baugh now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

[13] Baugh claims that the evidence was insufficient to support his conviction for dealing in methamphetamine. His sole contention is that the State failed to

show that he possessed the drug because the evidence "did not establish that he had either the intent or the capability to maintain dominion and control over an upstairs apartment where the methamphetamine was discovered." *Appellant's Brief* at 8.

[14] When reviewing a challenge to the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007) (quoting *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied.* We will not assess witness credibility or weigh the evidence to determine whether it is sufficient to support a conviction. *Casey v. State,* 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997). We will affirm the conviction unless no reasonable factfinder could find the element of the crime proven beyond a reasonable doubt. *Drane,* 867 N.E.2d at 146-47.

[15] While Baugh argues that the evidence failed to show that he possessed the methamphetamine seized from the upstairs apartment, we note that even though Baugh did not *actually* possess the drugs, constructive possession of the contraband may support a conviction for a drug offense. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). To prove constructive possession, the State must show that the defendant had both the intent to maintain dominion and control over the drugs, as well as the capability to do so. *Id.* The factfinder may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises

on which an officer found the item. *Gray v. State,* 957 N.E.2d 171, 174 (Ind. 2011); *Ross v. State,* 151 N.E.3d 1287, 1291 (Ind. Ct. Ap. 2020).

[16] When a defendant's possessory interest in the premises is non-exclusive, intent is established by evidence of additional circumstances pointing to the defendant's knowledge of the drugs' presence. *Gray,* 957 N.E.2d at 175. Such "additional circumstances" include the mingling of contraband with other items the defendant owns or other circumstances that may just as reasonably demonstrate the requisite knowledge. *Id.*

[17] In this case, the evidence demonstrated that the upstairs apartment contained only Baugh's personal property that included mail addressed to him and a handwritten card that accurately reflected Baugh's birth date. Additionally, the photo from a phone found in Baugh's truck showed him resting his head on the same pillowcase next to the same curtains that were present when the police officers searched the apartment. Moreover, neither Joshua nor McCullough—the other residents in the building—had a key to the upstairs apartment.

[18] Contrary to Baugh's assertions, this evidence renders the possibility that someone else absconded with Baugh's documents and stored them in the apartment extremely remote. And while Baugh contends that the documents found in the apartment "could" have referred to Baugh's son, and that it would be "unusual for a person to carry around a card as a reminder of his own birthdate," *Appellant's Brief* at 13, those arguments are requests for this court to reweigh the evidence, which we cannot do. *Purvis v. State,* 87 N.E.3d 1119,

1124 (Ind. Ct. App. 2017). Hence, the evidence established that Baugh had an exclusive possessory interest in the upstairs apartment.

[19] The State further established that the documents belonging to Baugh were found in the vicinity where the three bags of methamphetamine and other items connected to drug dealing were seized, and there was no evidence that these items were hidden or difficult to locate. Hence, the documents were sufficiently mingled with the methamphetamine to support Baugh's knowledge of the drugs' location, as well as his intent to maintain "dominion or control" over them. *See, e.g., Watt v. State*, 412 N.E.2d 90, 98 (Ind. Ct. App. 1980) (affirming the defendant's conviction for possession of marijuana where the evidence showed that the drugs were found in the defendant's dresser drawer).

[20] In conclusion, the State proved that Baugh had a possessory interest in the upstairs apartment, and the evidence established his intent to maintain dominion and control over the methamphetamine that was found in that apartment. For all of these reasons, the evidence was sufficient to show that Baugh was in constructive possession of the methamphetamine, and his challenge to the sufficiency of the evidence on this basis, fails.

## II. Double Jeopardy

[21] Baugh claims that his convictions for dealing in methamphetamine and maintaining a common nuisance cannot stand because a conviction on both counts violates the prohibition against double jeopardy under the Indiana Constitution.

[22]     Article 1, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." While this case was pending on appeal, our Supreme Court expressly overruled the test set forth in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999), when resolving claims of substantive double jeopardy. The *Richardson* court recognized that "two or more offenses are the 'same offense' in violation of [Indiana's Double Jeopardy provision] if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original).

[23]     In *Wadle v. State,* the Court observed that the *Richardson* tests "have proved largely untenable, ultimately forcing the Court to retreat from its all-inclusive analytical framework. What we're left with today is a patchwork of conflicting precedent and inconsistent standards, ultimately depriving the Indiana bench and bar of proper guidance in this area of the law." 151 N.E.2d 227, 235 (Ind. 2020). In overruling *Richardson,* the Court in *Wadle* adopted an analytical framework that applies statutory rules of construction. *Wadle* observed that when deciding whether a single criminal transaction violates multiple statutes with common elements, the first step is to examine the statutory language for each offense to determine whether the language of either statute expressly or impliedly permits multiple punishments. The Court explained that

> This framework, which applies when a defendant's single act or transaction implicates multiple criminal statutes (rather than a

single statute), consists of a two-part inquiry: First, a court must determine, under our included-offense statutes, whether one charged offense encompasses another charged offense. Second, a court must look at the underlying facts—as alleged in the information and as adduced at trial—to determine whether the charged offenses are the 'same.'

If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, 'included' in the other. But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the presumption is that the legislation intends for alternative (rather than cumulative) sanctions.

*Id.* at 235.

[24] In this case, the State concedes—and we agree—that neither the dealing statute nor the maintaining a common nuisance statute permits multiple punishment. Thus, when applying the appropriate framework to the facts and circumstances here, we next determine whether either offense is an included offense of the other. As defined by our legislature, an included offense is one that: (1) "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged," (2) "consists of an attempt to commit the offense charged or an offense otherwise included therein," or (3) "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission." Ind. Code § 35-31.5-2-168. "If neither offense is an included offense of the

other (either inherently or as charged), there is no violation of double jeopardy." *Wadle*, 151 N.E.2d at 248.

[25] Pursuant to I.C. § 35-48-4-1.1, the elements required to prove dealing in methamphetamine as a Level 2 felony include a defendant's (1) knowing or intentional; (2) possession with the intent to deliver; (3) methamphetamine; (4) in the amount of at least ten grams. The offense of maintaining a common nuisance is committed when the State proves that the defendant: (1) knowingly or intentionally; (2) maintains a residence or vehicle; (3) that was used for the purpose of unlawfully using, keeping, selling, or delivering a controlled substance or drug paraphernalia. I.C. § 35-45-1-5(c).

[26] While Baugh would have us conclude that the greater offense of dealing in methamphetamine is included in the maintaining a common nuisance offense, we cannot agree, as each of these offenses is separate and distinct. More specifically, Baugh's possession of more than ten grams of methamphetamine with the intent to sell it supports the dealing charge, and the apartment he rented or the vehicle he used for the use or sale of the drugs supports the maintaining a common nuisance charge. The charging information for dealing in methamphetamine did not contain any reference to maintaining a building, structure, vehicle, or other place to unlawfully keep or sell methamphetamine. Therefore, under the included offense statute, neither the possession of the methamphetamine with the intent to sell it, nor maintaining a common nuisance, is an included offense of the other.

[27] We also reject Baugh's claim that he was wrongfully convicted of committing the "same offense," under the "very same act" or "single transaction test." *See Appellant's Reply Brief* at 6. This test applies when the facts reveal only one continuous crime and the defendant's actions were "so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction." *Wadle,* 151 N.E. 2d at 249.

[28] Baugh asserts that he cannot be convicted of both offenses because the only evidence the State presented to show that he maintained a common nuisance was "the methamphetamine in his home *and* in his vehicle." *Appellant's Reply Brief* at 6 (emphasis added). Notwithstanding Baugh's claim, the State presented evidence and facts of each offense that were not material to the other. For instance, although Baugh contends that the methamphetamine seized from his apartment established the basis for both offenses, the State offered ample evidence demonstrating that Baugh was conducting an ongoing methamphetamine sales operation with the use of his vehicle.

[29] Baugh possessed nearly forty grams of methamphetamine, a scale, and empty plastic bags in his apartment. The detectives testified that the large amount of the drug, along with the other items that were seized, was indicative of dealing in the substance rather than possessing it for personal use. Baugh left the residence in his truck with a smaller portion of methamphetamine and three different cell phones. The jury could readily infer that Baugh was transporting a portion of the methamphetamine that he stored in the apartment to sell, thus

satisfying the elements required to prove the offense of maintaining a common nuisance.

[30] Given this evidence, it is only speculation that the methamphetamine seized from Baugh's *apartment* was important in establishing the elements necessary to prove the maintaining a common nuisance offense. *See, e.g., Rowland v. State,* No. 19A-CR-2761, *slip op.* at 8, (Ind. Ct. App. September 8, 2020) (finding no double jeopardy violation and affirming the defendant's convictions for both possession of marijuana and possession of paraphernalia when the State presented evidence that marijuana found in the pipes was separate and distinct from the additional marijuana found in the vehicle). In short, the State proved that Baugh committed two distinct criminal acts.

[31] For all these reasons, Baugh has failed to show that his convictions on both offenses violated the prohibition against double jeopardy.

[32] Judgment affirmed.

Riley, J. and May, J., concur.