J. RUSSELL LeCLERCQ AND RAYMOND LEROY BANFIELD *v.* STATE OF INDIANA.

[No. 1-1075A177. Filed February 14, 1977.]

*Good & Murphy,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—Defendants-appellants J. Russell LeClercq and Raymond L. Banfield appeal from their conviction in a jury trial of theft over $100.[1]

We affirm.

## FACTS

Lance Hutchinson worked at the Arlington East Hill Cemetery where he had mowed grass with a John Deere model 110 tractor. On July 26, 1974, he observed that the tractor had been parked for the night inside a locked shed at the cemetery.

Later that evening, as he was passing the cemetery en route to a fair, he saw a truck drive out of the cemetery carrying the tractor. He followed the truck to identify the tractor and to get the truck's license plate number. He relayed a description of the truck and its license plate number to his grandfather, who notified the Shelby County Sheriff and the Indiana State Police. Lance then returned to the cemetery to discover the shed open and the cemetery's tractor missing.

After ascertaining that the license plate on the truck was registered to LeClercq and learning that he had recently purchased a house, two state police officers tried to locate LeClercq in order to question him about the use of his vehicle. They came upon his house before realizing it, but as they drove past it on a county road they notice Banfield mowing the front yard with the John Deere tractor while LeClercq stood by. The officers also saw at LeClercq's home a truck which fit the description and bore the license plate number provided by Lance.

---

1.  IC 1971, 35-17-5-3 and 35-17-5-12(3) (Burns Code Ed.).

The officers turned their patrol car around and returned to the LeClercq residence. But by then the tractor had disappeared. They approached LeClercq and Banfield, who by then were in the back yard. Then the officers saw the tractor, which had been parked behind an outbuilding in the back yard.

They spoke to LeClercq and Banfield; then one of the officers walked to the tractor and matched the serial numbers on it with the numbers of the cemetery's tractor. LeClerq and Banfield were then arrested.

### ISSUE

Whether the state police officers conducted an unlawful search and seizure.

### DECISION

LeClercq and Banfield contend that inasmuch as the officers acted without a search warrant and before arresting the appellants, there occurred a search and seizure which violated the Fourth Amendment to the United States Constitution as well as Art. 1, Sec. 11 of the Indiana Constitution.

The rule that a valid search warrant is a condition precedent to a lawful search and seizure has certain exceptions where exigent circumstances require an immediate response. *Ludlow* v. *State* (1974), 262 Ind. 266, 314 N.E.2d 750. One of the exceptions encompasses evidence in the plain view of the seizing officer. *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. This court recently restated the plain view doctrine in *Cooper* v. *State* (1976), 171 Ind. App. 350, 357 N.E.2d 260, 264:

> "Hardy walked over to the car for the purpose of checking it for valuables. As he stood there looking in the window, he noticed a small package with a needle sticking out of it lying on the front seat on the driver's side. Clearly, Officer Hardy had a right to stand in the alley and look into Cooper's car. Thus, the needle and package were subject to seizure under the 'plain view' exception to the warrant requirement. *Objects falling in plain view of an officer who has a right to be in a position to have that view are subject to seizure without a warrant.*" (Our emphasis)

In *Millar* v. *State* (1973), 260 Ind. 368, 295 N.E.2d 814, officers of the Niles Police Department received an area broadcast reporting that Millar was wanted in a murder investigation and giving a description of his auto and its license plate number. Later, two Niles officers spotted a car fitting the description and bearing the wanted license plate number. They approached the vehicle and saw a rifle and ammunition next to Millar in the car. Millar argued on appeal that the weapon and ammunition were inadmissible at trial as the fruits of an unlawful search.

Our Supreme Court stated, at 260 Ind. 373:

". . . [I]t is quite clear from the testimony of Officer Mason of the Niles Police Department that there was, in fact, no search. The officers certainly had probable cause to approach and question the appellant. As they did this they observed each of the exhibits complained of in open view on the front seat beside the appellant. Such a discovery does not come within the ambit of a search."

It was also held that there had been no search in *U.S.* v. *Molkenbur* (8th Cir. 1970), 430 F.2d 563, *cert. den.*, 400 U.S. 952, which stated:

"Molkenbur's arrest occurred on April 16. On that date, Mrs. Berghofer and her two daughters, while visiting in the premises across the street from the Toler home, saw Molkenbur again drive the Hennis Truck Lines tractor-trailer unit to front of the Toler residence. One daughter who knew Officer Ubben telephoned him at police headquarters to report the stop. While she was speaking to Ubben, the other ladies reported seeing the driver take a large package from the truck and hand it over the fence to Toler, who dragged it to the rear of the house. The caller relayed this additional information to Ubben. . . .

\* \* \*

"Officer Ubben and his partner, William Tipolt, arrived at the Toler address in another squad car which they drove into the public alleyway at the rear of the Toler residence. From there, these officers observed a large, partly-torn-open cardboard carton located near the rear of Toler's yard, just inside a three-and one-half or four-foot chain-link fence. The carton lay between the fence and a hedge row located in back of the house. The hedge partially obstructed the

view from the house toward the back yard. Ubben saw Sergeant Llewelyn near the rear of Toler's house and called to him, directing his attention toward the merchandise in the cardboard box. Llewelyn then walked toward the fence and saw these items. Thereafter, Ubben and Tipolt entered the yard and arrested Toler for suspected theft.

\* \* \*

*"This case falls outside the 'search' provision of the Fourth Amendment. Police officers who see objects in plain view discover them without any search.* In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the Supreme Court said:

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. (Citations omitted.) 390 U.S. at 236, 88 S.Ct. at 993.

\* \* \*

"The facts in the instant case justifying Toler's arrest and the seizure of the stolen merchandise are stronger than in *Ker, supra,* 374 U.S. 23, 83 S.Ct. 1623. Ubben and Tipolt discovered the men's clothing bearing the manufacturer's lable in plain view without first entering the premises. This discovery, together with the information that these officers had received via the police radio, furnished an appropriate basis for Toler's arrest as a person participating in the commission of a felony, that of possessing stolen property valued at more than $50.00." 430 F.2d 565-567. (Our emphasis)

LeClercq and Banfield rely on *Ludlow, supra,* in their argument that the officers' discovery of the tractor was not "inadvertent."

In *Ludlow,* although police officers learned that drugs were present in a certain room of a home they did not obtain a search warrant. Instead they found arrest warrants for two persons in the house. When the officers entered the house to execute the arrest warrants, one of them went directly to the room where he knew the drugs would be and seized them.

Our Supreme Court held that the drugs were inadmissible at trial, stating, at 314 N.E.2d 753:

"The discovery of the metamphetamines was hardly fortuitous or inadvertent, as would be required for a proper application of the plain view exception. The police knew of the existence and exact location of the drugs in the house and they intended to seize them in the course of the arrest. In fact the police had known for some time of the probable role of the house of Guion Road in allegedly illicit drug activities. The opportunity for a warrant was thus hardly fleeting. There is simply no compelling reason offered by the State for not obtaining a search warrant. There are no exigent circumstances revealed by the evidence here."

The officers in the instant case used no pretext in order to see the tractor from a place where they otherwise would have had no right to be; they saw it from a public thoroughfare. Nor did they drive to the LeClercq home with knowledge that the tractor would be present there.

And the rapid disappearance of the tractor once the officers drove past demonstrated the exigent cvircumstances present in the case at bar.

The officers' efforts to find and speak with LeClercq and their presence on the road in front of his home did not constitute and unjustifiable intrusion. And their actions were limited to checking the serial numbers on the tractor. See *Coolidge, supra.*

We therefore find no error in the trial court's admission of evidence relating to the tractor inasmuch as this case comes within the plain view exception to the rule that searches and seizures must be conducted only with valid search warrants.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 359 N.E.2d 920.