STATE of Indiana, Appellant–Plaintiff,

v.

Donteau GLADNEY, Appellee–Defendant.

No. 49A02–0304–CR–339.

Court of Appeals of Indiana.

Aug. 15, 2003.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff the State of Indiana ("State") appeals the trial court's grant of Donteau Gladney's motion to suppress evidence. We reverse and remand.

### Issue

The State raises one issue on appeal, which we restate as whether the trial court's order granting Gladney's motion to suppress the handgun was contrary to law.

### Facts and Procedural History

The relevant facts are undisputed. On October 8, 2002, at approximately 1:39 a.m., Indianapolis Police Officer Brian Allen ("Officer Allen") was on routine patrol in the east district of Indianapolis and observed a car parked on the side of the street with its interior dome light illuminated. Officer Allen noticed a male, later identified as Gladney, sitting in the front passenger seat and leaning across the center console of the car underneath the steering wheel. Concerned that an attempted theft might be in progress, Officer Allen slowed his vehicle to a stop and reversed toward the car. When Officer Allen approached the car the second time, he saw Gladney sitting in the passenger seat and a female sitting in the driver's seat of the car. Because he had never lost sight of the car after first observing it, and because the car doors had remained closed, Officer Allen believed that the female was in the car when he had first observed it, but that she was either "ducking" down or lying down in the seats. Appellant's App. at 49. Officer Allen suspected that the two individuals might be involved in a drug deal, prostitution, or both. During his tenure with the Indianapolis Police Department, Officer Allen had made several arrests in the east district for drugs and prostitution.

Officer Allen parked his vehicle and began walking toward the car. When Officer Allen approached the car, the driver started the car and the car began slowly moving. Officer Allen observed Gladney "fumbling with a sweatshirt and what appeared to be some kind of object in the sweatshirt." *Id.* at 51. Officer Allen ordered the driver of the car to stop, and she complied. Because Officer Allen could not see Gladney's hands, and because Gladney continued to fidget with an object in the sweatshirt, Officer Allen became concerned that Gladney was hiding a weapon in the sweatshirt. Officer Allen drew his weapon and ordered Gladney to put down the sweatshirt and show his hands. Gladney "placed the sweatshirt down upon the center console and what appeared to be a semi-automatic handgun ... fell out from an opening in the sweatshirt." *Id.* at 54. Officer Allen immediately requested backup. Once backup arrived, Officer Allen ordered the driver and Gladney out of the car and retrieved the handgun from the passenger console.

On October 9, 2002, the State charged Gladney with Carrying a Handgun Without a License as both a Class A misdemeanor and a Class C felony.[1] On October 16, 2002, Gladney filed a Motion to Suppress the handgun, which the trial court granted after conducting a hearing. The State then dismissed the charges against Gladney and initiated this appeal.

**Discussion and Decision**

*I. Standard of Review*

The State challenges the trial court's order granting Gladney's motion to suppress. At the suppression hearing, the State had the burden of demonstrating the constitutionality of the measures it used to secure evidence. *State v. Ashley,* 661 N.E.2d 1208, 1211 (Ind.Ct.App.1995). To prevail on appeal, the State must show that the trial court's ruling on the suppression motion is contrary to law. *State v. Smith,* 638 N.E.2d 1353, 1355 (Ind.Ct.App. 1994). We accept the factual findings of the trial court unless they are clearly erroneous. *Williams v. State,* 745 N.E.2d 241, 244 (Ind.Ct.App.2001). In reviewing the trial court's decision, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *State v. Glass,* 769 N.E.2d 639, 641 (Ind.Ct.App.2002), *trans. denied.*

*II. Analysis*

The State argues that the trial court's order granting Gladney's motion to suppress was contrary to law because Officer Allen seized the handgun during a lawful investigatory stop. Gladney counters that Officer Allen did not have reasonable suspicion to justify the investigatory stop and, thus, the seizure of the handgun violated his constitutional rights. At the conclusion of the hearing on Gladney's Motion to Suppress, the trial court found as follows:

> The [trial court's] just not convinced [Officer Allen] has articulated enough facts to equate to a reasonable and justifiable suspicion of criminal activity that would have caused him to not only order them to stop but to draw his weapon when the driver was complying. There's just not enough here so the [trial court's] going to grant [Gladney's] motion to suppress.

Appellant's App. at 68–69.

First, we recognize that the Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Fourth Amend-

---

1. IND.CODE § 35–47–2–1.

ment's protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *See Berry v. State,* 704 N.E.2d 462, 464–65 (Ind.1998). As a general rule, the Fourth Amendment prohibits a warrantless search. *Id.* Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Id.* at 465.

One exception to the warrant requirement was recognized by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the United States Supreme Court established the rule that a police officer may, without a warrant or probable cause, briefly detain a person for investigatory purposes if, based upon specific and articulable facts together with rational inferences from those facts, "official intrusion upon the constitutionally protected interests" of private citizens is reasonably warranted, and the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 21–22, 30, 88 S.Ct. 1868.

■ The Supreme Court has stated that "[t]he concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations omitted). Rather, in evaluating the legality of a *Terry* stop, we must consider "the totality of the circumstances— the whole picture." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Therefore, the reasonable-suspicion inquiry is fact-sensitive and must be determined on a case-by-case basis. *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997), *modified on reh'g on other grounds,* 685 N.E.2d 698. The reasonable suspicion requirement is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State,* 735 N.E.2d 1179, 1183–1184 (Ind.Ct. App.2000); *see also Gipson v. State,* 459 N.E.2d 366, 368 (Ind.1984). Thus, reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Luster v. State,* 578 N.E.2d 740, 743 (Ind.Ct.App.1991). We review a trial court's determination regarding reasonable suspicion de novo. *Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000).

### A. The Investigatory Stop

■ Here, the State contends that the totality of circumstances presented in this case provided Officer Allen with the requisite reasonable suspicion to conduct a valid *Terry* stop. We agree. The undisputed facts reveal that, at approximately 1:39 a.m., Officer Allen observed a car parked on the side of the street with its interior dome light illuminated. Officer Allen saw Gladney sitting in the front passenger seat, but leaning across the center console of the car underneath the steering wheel. Initially, because of Gladney's posture in the car, Officer Allen was concerned that an attempted theft was in progress. Accordingly, Officer Allen slowed his patrol vehicle to a stop and reversed toward the car. When Officer Allen approached the car, he saw Gladney "hunched over" in the passenger seat and a female in the driver's seat of the car. Appellant's App. at 47. Because of his experience in patrolling this particular area of town, which includes making several arrests for drugs and prostitution, Officer Allen suspected that the two individuals might be involved in a drug deal, prostitution, or both.

For purposes of our analysis here, we will assume that when Officer Allen stopped the car, he commenced an investigatory stop. As previously mentioned, under Fourth Amendment jurisprudence police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. Thus, the question before us becomes whether Officer Allen had reasonable suspicion to conduct an investigatory stop. Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from those facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *See id.* When taken together, all the facts known to Officer Allen—the time of day, other circumstances surrounding the stop, and his previous knowledge of drug and prostitution activity in the east district—and the reasonable inferences drawn from them constituted reasonable suspicion that criminal activity was about to occur and justified a brief investigatory stop of the car and Gladney. *See, e.g., Clenna v. State*, 782 N.E.2d 1029, 1033 (Ind.Ct.App.2003).

■■■■ Because we conclude that Officer Allen had the requisite reasonable suspicion to perform an investigatory stop of the car, we must next determine whether the events that led to the discovery and seizure of the handgun were also lawful. It is well-settled that: "The purpose of a limited search for weapons after an investigative stop is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear for his safety or the safety of others." *State v. Dodson*, 733 N.E.2d 968, 971. (Ind.Ct.App.2000). An officer may only conduct a limited search for weapons when he has a reasonable belief that the suspect is armed and

dangerous. *Id.* However, the police officer need not be absolutely certain that the individual is armed. *Id.* Rather, the issue is whether a reasonably prudent person in the same circumstances would be warranted in the belief that his safety or that of another was in danger. *Id.* "In determining whether the police officer acted reasonably under the circumstances, due weight must be given, not to the officer's inchoate and unparticularized suspicions, but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience." *Id.* at 971–72.

■■ In the present case, the undisputed facts demonstrate that when Officer Allen approached the car, the driver started the car and the car began slowly moving. At that time, Officer Allen observed Gladney "fumbling with a sweatshirt and what appeared to be some kind of object in the sweatshirt." Appellant's App. at 51. Accordingly, Officer Allen ordered the driver of the car to stop, and she complied. Because Officer Allen could not see Gladney's hands and because Gladney continued to fidget with an object in the sweatshirt, Officer Allen suspected that Gladney was hiding a weapon in the sweatshirt. Consequently, Officer Allen drew his weapon and ordered Gladney to put down the sweatshirt and show his hands. Under these facts and circumstances, coupled with Officer Allen's experience with the east district, Officer Allen had reasonable suspicion to believe that Gladney may be hiding a weapon under the sweatshirt, and therefore, his request for Gladney to show his hands was proper.

### B. Seizure of the Handgun

■■ When Gladney put down the sweatshirt and showed his hands, the handgun fell onto the console in plain view. Items discovered in plain view are not the

products of a search and seizure. *Miller v. State*, 156 Ind.App. 140, 144, 295 N.E.2d 632, 634 (1973). Pursuant to the plain view doctrine, the following three conditions must exist to justify the warrantless seizure of evidence: (1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the "incriminating character" of the evidence must be "immediately apparent;" and (3) the officer must "have a lawful right of access to the object itself." *Crabtree v. State*, 762 N.E.2d 217, 220 (Ind.Ct.App. 2002). We have previously determined that Officer Allen did not violate Gladney's Fourth Amendment rights by approaching the car. In addition, the incriminating character of the handgun at issue here was immediately apparent. Thus, if Officer Allen had a lawful right to access the handgun once it had fallen onto the console, the subsequent seizure of the handgun was proper pursuant to the plain view doctrine. *See, e.g., LeClercq v. State*, 172 Ind.App. 148, 151, 359 N.E.2d 920, 922 (1977) (holding that objects falling in plain view of an officer who has a right to be in a position to have that view are subject to seizure without a warrant). As such, to determine whether the trial court's order granting Gladney's motion to suppress was contrary to law, we must determine whether Officer Allen had a lawful right to retrieve the handgun from the car.

In *Dodson*, 733 N.E.2d 968, we encountered a similar issue. There, a police officer stopped the defendant's car and observed the defendant making furtive movements to the right side of his body, wearing an empty shoulder holster, and hesitating at following the officer's commands. *Id.* at 972. The officer believed that the defendant had a handgun and feared for his safety. *Id.* Accordingly, the officer conducted a pat down search of the defendant and placed the defendant in handcuffs. *Id.* The officer then conducted a search of the vehicle and discovered a handgun that was hidden in the center console. *Id.* In reversing the trial court's grant of defendant's motion to suppress, we held that:

> Although [the officer] acknowledged that he no longer felt threatened by [the defendant] after he had been placed in handcuffs, this is not the critical moment for the search. It was during the initial investigatory stop that circumstances arose which created a reasonable belief that [the defendant] was armed. It was at that same moment that [the officer's] right to conduct a limited weapons search of the passenger compartment of the vehicle to protect himself and others arose. Accordingly, we hold that the State met its burden of proving that the weapons search of [the defendant's] vehicle was a valid search prompted by reasonable concerns for the safety of [the officer] and others.

*Id.* at 972–973.

Likewise, here, we hold that because Officer Allen saw the handgun fall out of Gladney's sweatshirt and onto the console during the initial investigatory stop, Officer Allen had the right to conduct a limited weapons search of the passenger compartment of the vehicle to retrieve the handgun in order to protect himself and others. *See, e.g., id.* Accordingly, the seizure of the handgun was proper. The trial court's suppression order was contrary to law. *See, e.g., Overstreet*, 724 N.E.2d at 664.

For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH and VAIDIK, JJ., concur.